WILLIAM VOGT, Appellant, v. CITY OF GRINNELL.

**Sewers:** NUISANCE: LIMITATION OF ACTIONS. The fact that a sewerage system has been permanently constructed will not render a nuisance created thereby permanent so as to bar an action for damages not commenced within five years from the date of its construction.

**Damages:** NUISANCE. The measure of damages to pasture land caused by pollution of the water is the loss of the use of the land.

**Damages:** EVIDENCE. In an action for damages caused by the pollution of water, evidence as to the ordinary increase in the weight of cattle and that plaintiff's cattle did not increase in weight because of the impure water was competent, but recovery cannot be had both for loss of use of the land and failure of the cattle to increase in weight.

**Evidence:** The admission of evidence as to the analysis of water flowing through plaintiff's land made after a discontinuance of the cause of its pollution was inadmissible, in the absence of a showing that the water was in the same condition as when the action was commenced; it was also error to admit evidence of the condition of another stream several miles distant.

**Estoppel:** EVIDENCE. On the issue of estoppel the evidence is held insufficient.

*Appeal from Poweshiek District Court.*—HON. JOHN T. SCOTT, Judge.

FRIDAY, MARCH 11, 1904.

THE city of Grinnell began the construction of a sanitary sewer system in 1891 or 1892, and continued the work until 1896 when about nine or ten miles of mains had been laid. Little Bear creek rises within the city limits, and has been used since 1895 as an outlet for the sewage. The plaintiff's farm is three miles from the city, and prior to August, 1897, the water of this creek, which flows through his pasture of about four hundred forty acres, does not appear to have become contaminated. But the evidence tended to show that

„during the four succeeding years the stream was poisoned by the sewage of the city, and that its waters threw off a stench of putrefaction.  The lapse of so long a period before the water was affected is explained by the constantly increasing number of sewer connections—being one hundred  one  in 1897, and three hundred thirty-four in 1902—and the fact that, as the ground filled with sewage, it was forced farther and farther downstream, until reaching a point where the organic matter was completely destroyed by putrefactive bacteria.  The evidence also tended to show that plaintiff kept one hundred twenty-five head of cattle in this pasture during the season of 1898 and each of the following  years;  that, whereas cattle would ordinarily make a growth of from two hundred to three hundred pounds a year, his cattle, owing to the pollution of the water in the creek which  they  drank, added nothing to their weight; and that the pasture, which was ordinarily worth $2.50 to $3 per acre,  was  rendered worthless thereby.  It was conceded that the sewers were of permanent construction, and intended for use for all time. At the close of plaintiff's evidence the defendant moved that the court direct a verdict in its favor on two grounds:  (1) Because the nuisance was permanent, and had existed more than five years before the action had been begun; and (2) for that no depreciation in the value of plaintiff's farm, owing to such nuisance, had been proven.  This motion was taken under advisement, and, when all the evidence had been introduced, a verdict was directed for defendant.  Judgment was rendered thereon, and plaintiff appeals.—*Reversed.*

*R. M. Haines, Jr.* and *P. G. Morris* for appellant.

No appearance for appellee. ·

LADD, J.—The mere fact that the city sewers were of per-. manent construction did not render the nuisance occasioned by them permanent also, for the municipality had the right
1. NUISANCE:    at any time to abate it.  In this respect cases
limitation of
actions.       like the present one differ from *Powers v. City of Council Bluffs,* 45 Iowa, 652, for there, as was observed

in *Hunt v. Iowa Central Ry.,* 86 Iowa, 15, "the whole injury was regarded as having occurred at one time, and that time having been more than five years prior to the commencement of the suit, it was held to be barred. The injury was of such a character as to be beyond the defendant's power to remedy. It would be compelled to go onto lands of others to erect barriers to prevent the damage. In this case, as is shown by the evidence, the remedy is in the defendant's own hands, by work done upon its own land." Again, it was pointed out in *Bennett v. City of Marion,* 119 Iowa, 473, that the injury in the *Powers Case* was beyond the city's power to repair. "The remedy to be applied there, if any, was the construction of a wall on plaintiff's premises, where defendant had no right to go. Here the remedy could be applied on defendant's own premises, and there can be no doubt of its duty to abate the nuisance." As was said in *Hollenbeck v. City of Marion,* 116 Iowa, 70, "Modern scientific research has discovered means of disinfecting and deodorizing sewage so that it is practically innocuous. * * * While the system may be said to be permanent, it does not appear that the nuisance created thereby may not at any time be abated by the defendant or by the court." See, also, *Pettit v. Town of Grand Junction,* 119 Iowa, 352, and *Costello v. Pomeroy,* 120 Iowa, 213, where it is said that the wrong considered in *Power v. City of Council Bluffs, supra,* and other like cases, consisted, not in creating a nuisance where the party had no right to be, but in negligently making an improvement where the right to construct it existed, and also that the doctrine of those decisions ought not to be extended. The nuisance consists not in the construction of the sewers in an illegal manner, nor where the city had no right to place them, but in pouring the filth from them into this stream, instead of destroying it by filtration through beds of sand, and the use of a septic tank, thereby rendering the sewage innocuous. Indeed, this is precisely what the city did when threatened with a suit. A temporary excavation for filtration was made immediately, and an appropriate tank,

adequate for the disposal of all the sewage, to be completed by the 1st of December following, contracted for; thereby demonstrating that the nuisance was not permanent. A nuisance cannot be permanent which can be abated without unreasonable expense by the party creating it.

II. The measure of damages flowing from a continuing nuisance is not, as suggested in the motion, the depreciation of the market value of the land, for it may be abated some time, but ordinarily the loss in its use caused thereby, and such special damages as may result therefrom. *Shirley v. Ry.,* 74 Iowa, 171; *Hollenbeck v. City of Marion,* 116 Iowa, 70; *Randolf v. Town of Bloomfield,* 77 Iowa, 50; *Ferguson v. Firmenich Mfg. Co.,* 77 Iowa, 576; *Churchill v. Burlington Water Co.,* 94 Iowa, 89.

2. DAMAGES: nuisance.

In the instant case there was evidence that the pasture of four hundred forty acres, with the water of the creek befouled by the sewage, was worthless, while without this its rental value would have been from $2.50 to $3 per acre. There was also evidence that, while cattle ordinarily grow so as to add from two hundred to three hundred pounds weight during a season, the plaintiff's cattle were no heavier when taken out of the pasture than when put in. This evidence was rightly received as tending to support the claim of loss in value of use of the land. But the plaintiff cannot be allowed both the loss in the value of the use of the land, and also the value of the probable increase in the weight the cattle failed to make. To allow recovery for both would be equivalent to awarding double damages. If other injury could be shown, save the loss of the growth which would have been probable but for the pollution of the stream, probably plaintiff should recover the damages resulting therefrom. But the appellant may concede that he had had the use of the pasture, and base his claim for damages upon the injury to his cattle alone, resulting from drinking the poisonous waters, but for which they would have increased in weight. He should choose, however, on which theory he will rest his demand for damages.

3. DAMAGES: evidence.

III.   An expert was allowed to testify to the analysis of water taken from the creek in plaintiff's farm after the temporary excavation for filtration had been in use three months.

4. EVIDENCE.   In the absence of some proof that the water was in substantially the same condition as before the beginning of the suit, August 5, 1902, this was an error.   Also evidence of the condition of another creek several miles distant was wholly irrelevant to the issues.

The plea of estoppel was not sustained by sufficient evidence to carry that issue to the jury.   There was no showing that the city acted otherwise than it would have done but for

5. ESTOPPEL: the suggestion of plaintiff or his attorney that
   evidence.    a suit might be avoided, or would not be
brought, if the nuisance should be promptly abated; nor was it made to appear that it was misled or prejudiced in any way by such statements.   What has been said disposes of the plea of the statute of limitations.   Other rulings separately argued are deemed correct.   Those discussed in a general way have received no attention, for the appellant must point out the particular error in the specific ruling, in order to invoke the determination of this court.—REVERSED.