Donald T. PATZ and Eileen H. Patz, Appellees,

v.

FARMEGG PRODUCTS, INC., Appellant.

No. 54679.

Supreme Court of Iowa.

April 13, 1972.

Mitchell, Mitchell, Murray & Goode, Fort Dodge, and Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

Johnson, Burnquist & Erb, Fort Dodge, for appellees.

HARRIS, Justice.

Appeals by plaintiffs and defendant present questions on the conflicting interests of an agri-business and the environmental rights of adjoining land owners. Defendant appeals the trial court's holding the defendant's poultry operation amounted to nonabatable nuisance. Plaintiffs also appeal, claiming failure to award special damages. We affirm on both appeals.

Defendant assigns but two errors. It claims the trial court erred in finding the operation created a nuisance. And it claims error in finding any nuisance was permanent and not abatable. Plaintiffs' sole assignment is on the claim that no special damages were awarded.

Our review is de novo. Rule 334, Rules of Civil Procedure. We are not bound by but give weight to the findings of the trial court. R.C.P. 344(f) (7).

Plaintiffs, husband and wife, farm certain land purchased by them in 1962. The farm includes a 160 acre tract with building site and a 40 acre tract directly south across the road. Plaintiffs have made extensive improvements to nearly every building. Some new ones have been added. The farm home has been extensively remodeled to comfortably accommodate plaintiffs and their seven children. Cost of remodeling the home amounted to about $15,-000.

Defendant was organized during 1969 and is a wholly owned subsidiary of Mid-America Foods. Its principal activity is to convert locally grown food stuffs into consumer products, principally eggs.

Defendant has invested extensively in physical facilities. It has a large egg lay-

ing facility in Webster County accommo-dating about 400,000 laying chickens. Supporting this facility are four growing sites in Webster County, situated conveniently to the main laying site. The supporting units house day old chicks until they are 22 weeks old, at which time they are removed from the growing units to the egg laying facility.

One of the supporting facilities, referred to as the south Clare site, is located less than 1000 feet southeast of plaintiffs' farmstead. The south Clare site is built on a tract of only four acres purchased in 1969. Prevailing winds at the site during spring, summer, and fall cause odors emanating from the facility to cross over and onto plaintiffs' farmstead.

On the four acre tract defendant has erected, east and west, two metal buildings, one 398 x 40 feet and the other 390 x 40 feet. In each building are five rows of cages with 720 cages in each row. Manure is collected in a ten inch pit directly below the cages.

Under the plan, birds, 12 to 13 for each cage, remain in an artificial climate known as a controlled environment facility. There are temperature controls including air conditioning. Outside light is eliminated in order to control the length of days for reasons important to the poultry industry.

There is a ventilating system. The air inside the facility is drawn through exhaust fans and discharged outside. This is done by a system which includes 24 large fans. These fans are all located on the north walls of the two buildings facing plaintiffs' farmstead. The ventilation system has various crucial objectives. One is to contribute to drying the manure. It is independently important in the operation to bring in air, provide oxygen, and remove waste products and contaminants from the facility. Waste contaminants include humidity, carbon dioxide, ammonia, dust, bacteria, molds, and viruses. It is manifest the

ventilation system accomplishes its purposes by discharging these waste products into the environment.

I. Certain of the legal principles involved are neither questioned nor obscure. They have been repeatedly explained in nuisance cases presented to us with some regularity, beginning in the 19th century. A recent statement of the law applicable is to be found in Bates v. Quality Ready-Mix Co., 261 Iowa 696, 702, 154 N.W.2d 852, 857. We quote:

"This action was brought and prosecuted under Code sections 657.1 and 657.2(1).

"Section 657.1 provides: 'Whatever is * * * offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.'

"Code section 657.2 states: 'The following are nuisances: 1. * * * using any building or other place for the exercise of any trade, * * * which, by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals * * *.'

■ "The above statutory enumerations do not modify the common-law application to nuisances. The term 'private nuisance' refers to an actionable interference with a person's interest in the private use and enjoyment of his land. (Citations.)

■ "One must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably interfered with or disturbed. (Citations.)

■ "A fair test of whether the operation of a lawful trade or industry constitutes a nuisance has been said to be the reasonableness of conducting it in the man-

ner, at the place and under the circumstances in question. (Citations.) Thus the question whether a nuisance has been created and maintained is ordinarily one of fact, and not of law, depending on all the attending or surrounding circumstances. Each case of this nature must depend on its own facts." (Citations.)

▪ An earlier Iowa case widely cited and relied upon by this court continually through the years is Higgins v. Decorah Produce Co., 214 Iowa 276, 242 N.W. 109, 81 A.L.R. 1199. The Higgins case held while a produce plant was not a nuisance per se, it might be located, maintained, and operated as essentially to interfere with the comfortable enjoyment of the property of others. Accordingly it might constitute a nuisance. We held a perfectly lawful business operated under some circumstances and in some locations might so interfere with the comfortable use and enjoyment of private property as to constitute a private nuisance. When it did so, it was subject to abatement. The rules as announced in Higgins and in our later cases seem clearly established and universally accepted. 66 C.J.S. Nuisances § 111, page 870; 58 Am.Jur.2d, Nuisances, section 150, page 730.

▪ The existence of a nuisance is not affected by the intention of its creator not to injure anyone. Claude v. Weaver Construction Co., 261 Iowa 1225, 158 N.W.2d 139; Iverson v. Vint, 243 Iowa 949, 54 N.W.2d 494; Bonnell v. Smith, 53 Iowa 281, 5 N.W. 128; 66 C.J.S. Nuisances § 10, p. 750.

For a thoughtful study on the question of nuisances as it particularly pertains to odors from livestock confinement facilities, see 57 Iowa L.Rev. 451. It is interesting and perhaps unique the note contains an extensive review of the trial court's decree in this case. See also 12 Drake Law Review 113.

▪ In determining whether a nuisance has been created we consider priority of location, the nature of the neighborhood, and of the wrong complained of. Schlotfelt v. Vinton Farmers' Supply Co., 252 Iowa 1102, 109 N.W.2d 695.

Plaintiffs clearly enjoyed priority of possession. As previously stated they occupied and made extensive improvements to their farmstead. They did so prior to the acquisition of the four acre tract by defendant. The nature of the locality before defendant commenced operation was typical for rural Iowa.

Defendant's operation was deliberately planned with full knowledge of proximity of plaintiffs' farmstead. The facility was constructed at a site of only four acres. This further limited or eliminated chances that the facility might accommodate plaintiffs' residence.

The central dispute in this controversy has to do with the collection of manure. The process employed by defendant, known as an aerobic system, was described as the most scientific and sophisticated available. The aerobic system proceeds from a singularly simple premise. The manure is collected and kept during the entire 22 week period in such a way as to try to make it become and remain dry. But manure at the facility did not always remain dry. Leaking valves created a wet manure problem. Wet manure is antithetic to the aerobic system. Plaintiffs claim that considerable suffering and damage resulted to them from the operation of the facility. Defendant insists, except for the wet manure problem which they characterize a temporary problem, the operation created nothing offensive to the sensibilities of an ordinary rural Iowan.

▪ Of course the standard used in determining whether an invasion involving personal discomfort or annoyance is substantial, is the standard of normal persons in a particular locality. This is not to in any way disparage the expert witnesses called by defendant. However, expert testimony is received in order to throw light

on the normal person's standard and not to supplant the standard itself. We approve the following comment which follows section 822, Restatement of Torts 230:

"If normal persons living in the locality would regard the particular situation as definitely offensive or annoying, then the invasion is substantial, * * * Rights and privileges in respect to the use and enjoyment of land are based on the general standards of normal person. * * *" See also Higgins v. Decorah Produce Co.

We find the offensive odors were not limited to the short period claimed by defendant. Rather they were apparent when the operation at the site was normal, at all times prior, and even during the trial. Plaintiffs' witnesses lived in the area and were familiar with normal farmyard odors. Odors emitted from defendant's facility were described variously as "dead or the body was decomposed", "almost gagged you", "kind of an ammonia smell", "odor of something decaying", "gave me a severe headache", "I was nauseated to the extent that I was gagged", "a raunchy sickening smell", "a rotting smell." Several witnesses testified to extreme nausea, gagging, and in one case, vomiting. Plaintiffs' witnesses insist that the odor was far different from those experienced in an ordinary livestock operation. Several witnesses insisted it would be impossible to stay or sleep in plaintiffs' farm house.

Defendant's witnesses, with one exception, were experts or involved in the poultry business.

We adopt the following language of the trial court:

"The plaintiffs are persons of ordinary sensibilities. Their witnesses are the same. These sensibilities have been unreasonably offended. The Court finds that the odors coming from the south Clare site were offensive smells that were injurious and dangerous to the health and comfort of the plaintiffs and their family. As a result of the odors carried by the wind from the south Clare site, the plaintiffs' children became irritable, lost their appetites and had headaches. The plaintiff wife has become nauseated and nervous. She is unable to sleep and takes medication for an upset stomach. The plaintiff husband has suffered loss of appetite to the extent that he has lost weight. Both plaintiffs have physical symptoms, i. e., nausea, nervousness, etc., produced by psychic tension as a result of the nuisance in question."

Defendant can make no claim that its operation is agricultural. That question turns not on whether agricultural products are involved. Rather it has to do with production activity. Farmegg Products Inc. v. Humboldt Co., 190 N.W.2d 454 (Iowa 1971). The raising of over 80,000 chickens in one facility is not incident to rural life. State ex rel. Pansing v. Lightener (1934 C.P.) 32 Ohio N.P., N.S., 376.

We conclude there is no merit in defendant's first proposition. The operation clearly constituted a nuisance.

II. Defendant's second proposition is valid but is of no avail to defendant. The trial court found the operation a permanent nuisance. Defendant rightly insists it was not. We have often considered the question of when to classify a nuisance permanent and when to consider it continuing. The distinction is explained in Ryan v. City of Emmetsburg, 232 Iowa 600, 607, 4 N.W.2d 435, 440:

"* * * a permanent nuisance is one of such character and existing under such circumstances that it will be reasonably certain to continue in the future. This contemplates that it is at once necessarily productive of all the damage that can ever result from it. Hence the damage is said to be original."

A nuisance which is subject to abatement is not permanent. Vogt v. City of Grinnell, 123 Iowa 332, 98 N.W. 782.

 

A somewhat similar nuisance was held by us to be continuing and not permanent in Riter v. Keokuk Electric-Metals Co., 248 Iowa 710, 82 N.W.2d 151.

■ The trial court did not order abatement of the nuisance. It applied the balance of hardship test and ordered the payment of money damages by defendant to plaintiffs. Such an award is authorized in continuing as well as in permanent nuisances. Riter v. Keokuk Electric-Metals Co.; Friedman v. Forest City, 239 Iowa 112, 30 N.W.2d 752.

■ Defendant does not rely, in either proposition assigned for reversal, on the damage award. If defendant could show an improper damage award such a showing could not prompt a reversal. Propositions not assigned under R.C.P. 344 will not be considered on appeal. The rule applies to propositions in equity as well as to errors assigned in law matters. B–W Acceptance Corp. v. Saluri, 258 Iowa 489, 139 N.W.2d 399; Randolph Foods, Inc. v. McLaughlin, 253 Iowa 1258, 115 N.W.2d 868. Accordingly defendant can claim no harm in the trial court's erroneously labeling the nuisance as permanent rather than, as it should, continuing.

■ III. We are left with a consideration of plaintiffs' claim the trial court improperly denied them special damages. But plaintiffs fail to show the trial court did not make such an award. $20,000 was awarded by the trial court as "plaintiffs' permanent and total" damages. Under rule 95, R.C.P., plaintiffs could not be required to itemize or apportion their claim for unliquidated damages. No apportionment was offered by the trial court. We cannot speculate the special damages were omitted from the allowance made.

Affirmed.

All Justices concur, except UHLEN-HOPP, J., who concurs in the result.

UHLENHOPP, Justice (concurring specially).

I adhere to the views I expressed in dissent in Farmegg Products, Inc. v. Humboldt County, 190 N.W.2d 454 (Iowa). That decision is, however, the law. I therefore concur in the present opinion and in the reference to that prior case.