Joseph VALASEK, Mildred Valasek, Eugene Adams, and Laura Adams, Appellants.

v.

Richard BAER, Appellee.

No. 85–1785.

Supreme Court of Iowa.

Feb. 18, 1987.

Rehearing Denied March 26, 1987.

Alfred A. Beardmore, Charles City, for appellants.

James E. O'Donohoe of O'Donohoe, O'Connor & O'Donohoe, New Hampton, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

In this appeal we learn that the utopia of country living can be frustrated by modern farming practices. The plaintiffs in this case, Joseph Valasek and Mildred Valasek (Valaseks), and Eugene Adams and Laura Adams (Adamses), are neighboring property owners seeking to enjoin a third neighbor, Richard Baer (Baer) from spreading wastes from his hog confinement operation

on farmland near their homes. The district court held that Baer's spreading manure on the portion of his property near plaintiffs' homes did constitute a nuisance, but that injunctive relief was inappropriate. The court of appeals affirmed. We agree that defendant's activity created a nuisance. After weighing the reasonableness of defendant's conduct and appraising the relative hardships of the parties, however, we conclude that a limited injunction should be granted. Thus, we vacate the decision of the court of appeals, and affirm in part and reverse in part the judgment of the district court, and remand.

In this action alleging a nuisance, plaintiffs sought relief both in equity and at law by seeking an injunction and damages. The action was bifurcated and only the equity portion of the action concerning the injunction has been tried and appealed. On appeal, plaintiffs seek to enjoin defendant from spreading manure from a slurry pit upon the southeast quarter of section four.[1]

■ Our review of equity cases is de novo. Iowa R.App.P. 4. We find the following facts.[2] Little Cedar Road, a blacktop road, runs north-south along the east edge of section four. Valaseks' and Adamses' home sites adjoin the west side of the blacktop road. Valaseks' home, where they have lived since 1970, is in the northeast one-eighth acre of the southeast quarter, separated from the rest of the quarter by a narrow diagonal gravel road. Adamses' home, about one-half mile south, where they have lived since 1943, is situated on an eleven acre plot. Several years earlier, Adams sold the rest of the land in the southeast quarter to defendant.

We adopt the trial court's finding that defendant owns 170 acres west of the blacktop road and 213 acres on the east side surrounding his homesite. Defendant owns the land north, west and south of Adamses and southwest of Valaseks,

across the gravel road. Defendant also owns the land across the blacktop road from Adamses. We are uncertain as to the extent, if any, of defendant's land in the section south of Adamses and whether the remaining portion of defendant's 400 acre farm is east or west of the blacktop road.

At his home building site, south and east one fourth of a mile from Adamses, defendant maintains a hog confinement operation consisting of three separate structures. Below two of these structures are pits in which animal waste is accumulated. When these pits become full, they are emptied by means of a vacuum wagon and the waste is spread on farmland as fertilizer. These pits were built in 1979 or 1980.

This spreading is done several times per year, and causes highly obnoxious odors. The odors last for several days to a week after each application, and permeate the homes, cars, and clothing of the plaintiffs. On two occasions, in October and November of 1984, these odors were particularly bad, causing guests of Valaseks to leave to avoid the smell. One guest who left his car at Valaseks' for a short period had a bad smell in his car for two or three days. On those occasions, the spreading had been done on an eighteen acre area north of the Adams house and south of the Valasek house, coming within 120 feet of the Valasek home and within 365 feet of the Adams home. The odor was described by various witnesses as "nauseating," "worse than pig manure," "sickening," and "pungent." Mrs. Valasek got sick to her stomach and had headaches caused by the odor. In December of 1984, plaintiffs brought this action to enjoin defendant from spreading these wastes so close to their homes.

■ In a nuisance action, two determinations must be made. First, we must decide whether a nuisance exists. Second, if a nuisance does exist we must decide whether injunctive relief is appropriate in this

---

1. We deem it unnecessary to give the legal description of the real estate and therefore we delineate only the section involved.

2. In our review we are hampered to an extent because the testimony contains references to plots or drawings, not included in the record, which apparently showed the relative locations of farm sites.

case. *Helmkamp v. Clark Ready Mix Co.*, 214 N.W.2d 126, 129 (Iowa 1974).

I. *Nuisance.* A nuisance is defined as [w]hatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property. . . .

Iowa Code § 657.1 (1983). The statute further lists offensive smells in its enumeration of specific things deemed to be nuisances. *Id.* § 657.2(1).

■ Defendant's spreading of wastes from the hog confinement operation in close proximity to plaintiffs' homes created an uncommonly offensive smell. These odors were much more pungent and offensive than normal manure odors, which Valaseks and Adamses do not seek to enjoin. We agree with the district court's determination that the spreading of the manure in question in the immediate vicinity of plaintiffs' homes constitutes a nuisance. The offensive odor produced by the spreading did interfere with plaintiffs' comfortable enjoyment of their property. *See Patz v. Farmegg Prods., Inc.*, 196 N.W.2d 557, 561 (Iowa 1972).

■ The fact that defendant's hog operation was a lawful business and was being carried on in accordance with accepted standards does not impact on the finding of a nuisance. A lawful business, properly conducted, may still constitute a nuisance if it interferes with another's use of his own property. *Kriener v. Turkey Valley Community School Dist.*, 212 N.W.2d 526, 530 (Iowa 1973).

■ II. *Injunction.* In determining whether injunctive relief is appropriate in a given case, the test is the reasonableness of carrying on a lawful business in the manner, at the place and under the circumstances in question. *Patz*, 196 N.W.2d at 560–61. An injunction is an extra-ordinary remedy, and is accorded with caution, only where clearly required. *Kriener*, 212 N.W.2d at 536. The court must make a comparative appraisal of all factors, and determine the relative hardship to the defendant if an injunction is granted and to the plaintiff if it is denied. *Id.;* Restatement (Second) of Torts §§ 936(1), 941 (1979). We must consider such factors as priority of location, the nature of the wrong, the character and gravity of the resulting injury, *Page County Appliance Center, Inc. v. Honeywell Inc.*, 347 N.W.2d 171, 181–82 (Iowa 1984), as well as the nature of the neighborhood, *Patz*, 196 N.W.2d at 561.

The trial court held that defendant's operation was carried out "as reasonably as is possible under the circumstances and at the place in question," and that an injunction was thus inappropriate. We disagree. The only factors weighing in favor of denial of the injunction are the rural and agricultural nature of the neighborhood, defendant's usual practice of plowing or chiseling under of the spread manure in accordance with accepted methods to keep the odor down, and the slight hardship to defendant of having to drive one quarter of a mile farther to spread the manure, if he is enjoined from spreading in the areas close to plaintiffs' homes. The latter factor, one of economics, was referred to by defendant in the following testimony:

Q: Do you use your own entire farm over, say, a two-year period for spreading? A: No, my field furthest away from the buildings I cannot spread on account of economic times. I can't— When I fill silo—I think you'll ask any of these fellows that was up here—you cannot touch the sileage from your furthest fields away from the buildings and haul it—and haul that liquid manure back. So why not let the humus there and haul it to the fields closest to your buildings. We farmers are under enough of pressure without hauling all of this stuff—transportation.

Q: Now, what we're talking about is the most northeasterly fields? A: Well, that field northeast of me—the one that was clear north and east I very seldom ever haul that because that is a long haul. That is a real long haul.

Q: Is that further than Valaseks? A: Oh, yes. Absolutely.

Q: How much further? A: A quarter—quarter of a mile.

Defendant did not present evidence as to additional cost, and we infer that the cost would not be significantly greater because he would have to haul the waste only one quarter of a mile further beyond Valaseks' property, which is three-fourths of a mile away from the confinement pit. Defendant admitted that he spreads cattle manure on the 140 acres north of defendant's farm site, the closest area to defendant's home site. Plaintiffs have no complaints concerning this type of manure being spread near their homes. We are not insensitive to the economic problems confronting farmers. We are also aware that crop rotations, soil conditions, soil tests, weather conditions and seasons are factors with which defendant must contend in deciding the areas to be spread. We do not discount the difficult nature of defendant's problems; however, these difficulties do not grant a license to harm others. The factors militating in favor of issuing the injunction are far more compelling.

The plaintiffs enjoy priority of location, as Baer's hog confinement operation had been in existence only a few years, while the Valaseks had occupied their home for fourteen years and the Adamses theirs for over forty years. Priority of possession weighs heavily in favor of plaintiffs. *See Kriener*, 212 N.W.2d at 530. The character of the nuisance and the injury caused by it, however, are the most weighty of the factors in this case. The nature of the nuisance is more egregious than might be supposed.

While spreading manure on farmland for fertilizer is a fairly common practice, and most farm families are accustomed to the odor associated with the practice, the odor from a confinement operation is much worse. Credible expert testimony showed that, because the pit beneath the confinement houses contains no straw (as would manure taken from an ordinary barn), and thus no cellulose to stabilize the chemical breakdown of the manure, an organic compound with an odor like that of a skunk is produced. When the manure from these pits is spread on farmland, the odor is much more obnoxious than that of ordinary manure.

When this substance was spread on land in close proximity to plaintiffs' homes, the resulting stench was nauseating. The spread area was to the west and south of the homes. The prevailing wind blows from those directions towards the homes. The smell permeated their houses, clothing, carpeting, draperies and cars. Plaintiffs were forced to take extraordinary measures to avoid the odor. Plaintiffs, it should be noted, do not seek to enjoin Baer from carrying on his hog operation, nor from spreading the manure from the pits on his farmland. They only seek to enjoin him from spreading in close proximity to their homes.

■ The farmland owned by Baer consists of approximately 400 acres. Testimony by experts and by Baer himself established that only about 100 acres was needed to dispose of the wastes from Baer's hog operation. Baer conceded that, when a full pit was emptied completely, only eighteen to twenty acres would be needed for disposal of the waste taken from the pit. We think the manner in which Baer disposed of these wastes, *i.e.*, spreading them within a few hundred feet of plaintiffs' homes, was unreasonable, given the large number of acres available elsewhere for such disposal. The hardship to Baer of hauling the waste a quarter-mile farther is slight when compared to the hardships plaintiffs must endure when it is spread so close to their homes. We hold that injunctive relief is appropriate in this case.

We believe, however, that it is appropriate to restrict this relief by making it subject to a condition. Although some testimony indicated the odor would travel one half of a mile, one plaintiff conceded that he only needed an injunction to keep the spreading eighty rods, a quarter of a mile, from the house. We conclude that this request is reasonable if defendant takes steps to turn the pit manure underground on the same day it is spread.

Of course, this holding must be confined to the facts of this case. The determina-

tions that injunctive relief is appropriate, and of the appropriate distances, must be made under the facts of each case. Other factors such as construction of a home with knowledge of the spreading of this manure, different application practices, unavailability of alternative spread sites and other relevant matters may dictate a different result in another case. When determining whether injunctive relief is appropriate, each case must be decided on its own facts. *Patz,* 196 N.W.2d at 561.

III. *Scope of Injunction.* Although an injunction is appropriate in this case, we believe the scope of the injunction requested by plaintiffs is excessive. They ask that Baer be enjoined from spreading the wastes from his hog confinement operation on the southeast quarter of section four. We hold that the injunction should issue, enjoining defendant from spreading the waste from the slurry pits used as a part of his hog confinement operation over the southeast quarter of section four; however, defendant may spread such waste in the west half of such quarter section, subject to the condition that he must turn such waste under the soil on the date the material is spread.

We also note that relief was not requested for any other geographical area; consequently we believe it inappropriate to give relief as to other areas. As a practical matter, we would suggest that the parties use good common sense and act in a neighborly way to avoid the necessity of legal actions for further injunctions.

IV. *Summary.* We believe the trial court correctly determined that a nuisance existed; however, the trial court erred in holding that an injunction should not issue. Therefore, we vacate the decision of the court of appeals, and affirm the holding of the district court as to the existence of a nuisance. We reverse the district court's denial of injunctive relief, and remand for issuance of an injunction consistent with this opinion.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART, REVERSED IN PART; AND REMANDED.