Ronald J. McCARTHY and Dorothy J. McCarthy, Appellees,

v.

J. P. CULLEN & SON CORP., a Corporation and Durrant, Deininger, Dommer, Kramer & Gordon, a Partnership, Appellants.

No. 54828.

Supreme Court of Iowa.

June 29, 1972.

M. M. Cooney, Dubuque, for appellant, Durrant, Deininger, Dommer, Kramer & Gordon, a Partnership.

O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, for appellant, J. P. Cullen & Son Corp., a Corporation.

Reynolds, Kenline, Roedell, Breitbach & McCarthy, Dubuque, for appellees.

LeGRAND, Justice.

This is the aftermath of a school construction project in Dubuque County. The work caused substantial water damage to plaintiffs' property, which they attribute to negligent and improper drainage of surface water from the building site. A suit against J. P. Cullen & Son Corp., hereafter called the contractor, and Durrant, Deininger, Dommer, Kramer & Gordon, a Partnership, hereafter called the architect, terminated in a verdict against both defendants for actual damages in the amount of $5500.00 and for punitive damages against the contractor alone in the amount of $15,000.00. Both defendants appeal, and we affirm.

The appeal also involves cross-petitions by which each defendant seeks indemnity from the other. Both were dismissed on motion at the conclusion of the evidence. We consider these matters separately after deciding the other issues raised.

We recite the important facts upon which plaintiffs' case rests. In doing so we give the evidence in its light most favorable to plaintiffs, since our principal task is to determine if there is competent evidence to support the jury's findings. Needless to say much of the evidence was in dispute.

In 1968, the Dubuque Community School District entered into a contract with defendant contractor for the construction of the Steven Hempstead Senior High School in Dubuque at a cost of approximately $3,300,000. The defendant architect was employed by the school district to draw plans and specifications and to perform the general duties of an architect.

Excavation, which started on May 1, 1968, was a major undertaking, requiring the removal of almost 20,000 truck loads of dirt. From the outset, the work on the school job resulted in drainage problems for the plaintiffs, whose residential property is located adjacent to the new school. On numerous occasions quantities of mud and debris washed down onto plaintiffs' property, damaging both the inside and outside of the house and lot. To complicate matters the season was an unusually wet one. Rains were both frequent and heavy.

We paraphrase plaintiffs' testimony concerning their problems and frustrations over a two-year period—problems which still remained unresolved at the time of trial.

Plaintiffs' residence is a split-foyer structure with an attached car-and-a-half garage. It has a living room, kitchen, bath, and three bedrooms upstairs. The lower level consists of a family room, bedroom, master bedroom, bath and utility area. Plaintiffs and their children, now numbering seven, have lived in the house since July, 1963.

Prior to the construction of the high school, plaintiffs had no drainage problems, even when there were heavy rainfalls. Following the start of work, they frequently had standing water on their property. The first time was May 25, 1968. Mud and water came down the embankment at the back of the house. On May 29th there was a similar incident. On June 10th water and mud washed into the lower level of the house from two sides. On this occasion Mr. Gordon, one of the architects, came to the house. He observed the water on the floor and the mopping operation that was going on. On that occasion firemen were called to pump mud and water out of the house. Within the next day or two, a diversion ditch was dug in an apparent effort to stop the rush of water to plaintiffs' property.

There was a more serious mud slide on July 23, 1968. At that time the whole back yard and both side yards were completely under water. The firemen were again called to pump out the lower level of the house. After the water was pumped out, there were seven or eight inches of clay throughout the lower level. It was scooped up and carried out in bushel baskets. Clothing, luggage, and appliances— virtually everything on that level—were badly damaged or completely ruined. Furniture and paneling were water marked and warped. According to plaintiffs, on that occasion the water came down the hill so fast "it actually had whitecaps."

Mrs. McCarthy phoned the architect or the contractor. She isn't sure which. The next afternoon two or three workmen came down and entered the premises and made "somewhat of an effort" to wipe the walls for awhile. That was the only time either of the defendants made any effort to help plaintiffs.

Plaintiffs had water problems the rest of the summer and fall of 1968 and again during the summer months of 1969. Water frequently entered the basement; and when that happened mud and debris washed down onto the property in generous quantities. In 1969 there would be water on the basement floor "just about every rainfall of any size." None of the debris deposited on plaintiffs' property from May 1968 to the time of trial had been removed; neither defendant displayed any interest in rehabilitating plaintiffs' property, inside or out.

Plaintiffs have not been able to live in the lower level of their home since July 23, 1968. They are now occupying a bedroom which had previously been used by two of their daughters, who have moved in with the other girls. This means there are five girls in one bedroom and two boys in the other. This remained true at the time of trial.

Plaintiffs notified both the contractor and the architect without results. Several calls to the superintendent of schools followed. This brought a representative of the school board and one from the architect's office to the McCarthy house. They assured Mrs. McCarthy "something would be done about it." But nothing was, even though other complaints, both oral and written, followed. Other calls to the contractor, both at its home office in Janesville, Wisconsin, and Dubuque, were unavailing.

According to plaintiffs, they have had no help from anyone except for a few hours after the July 23 deluge. Perhaps Mrs.

McCarthy stated their plight best when she testified:

"You just couldn't imagine how awful that was. We took mud out by the bucketfuls. I just dragged it out. Everything was a mess. We just didn't believe that this would happen. * * * We have not received any help from the architect or contractor [since July 23, 1968] in either removing debris from our home or any other help. They have not come around at all. * * * Since July 23, 1968, having water on our property was almost like getting up in the morning. It happened all the time. When it rained we would get water. * * * From the period of July 1968 until [just before the trial started] when they came up to my house I had no knowledge that the architect or contractor was concerned with us."

The record shows there were workmen in the area during all the time and that the mud and debris accumulating in plaintiffs' yard were plainly visible. Plaintiffs' testimony and the photographs admitted as exhibits establish defendant contractor must have been aware of conditions. In fact no attempt to deny this was made. Although indefinite as to time and number, there is some evidence plaintiffs' lawyer made frequent attempts to enlist defendants' help in resolving the problem. He too, was unsuccessful. In retrospect it appears each defendant pointed to the other as the one responsible and did little or nothing to remedy the trouble. In the meantime the waters came—and plaintiffs carried out mud "by the bucket."

I. We consider first the appeal by the defendant contractor. Eight assignments of error are urged as grounds for reversal. They raise the following issues:

(1) Error in refusing to give a requested instruction on the duty of defendant architect;

(2) Error in Instruction 15 dealing with the obligations of the contractor; and

(3) Errors involved in the submission and award of punitive damages.

■ II. The defendant contractor asked the court for an instruction telling the jury the architect had the duty of furnishing the contractor with plans and specifications for the protection of the plaintiffs' adjoining property during the period of construction. The request was refused and timely objection was made.

We believe the trial court properly refused to give this instruction. The architect's duty is fully covered by the instructions given. Instruction 17 told the jury it could find the architect negligent if the evidence established a failure "to provide designs and plans for the protection of plaintiffs' property from surface water, mud, and debris, which reasonably could be expected to flow from the property of the Dubuque Community School District" or lack of due care in "designing and planning for the protection of plaintiffs' property from surface waters, mud, and debris which could reasonably be expected to flow from the property of Dubuque Community School District."

Furthermore Instruction 18 imposed upon the architect the duty of designing and preparing plans and specifications, including those dealing with site development and grading, which would not result in the improper collection and discharge of surface waters upon plaintiffs' adjacent property.

■ These instructions state in substance what the contractor wanted from his requested instruction. The architect's contention was that it was obliged to provide plans to insure proper drainage only upon completion of the project, not during construction. The instructions as given contain no such limitation. It is clear the architect's duty to furnish plans for this purpose applies while the work was being done. We see nothing in the requested instruction which is not included in those given. When the matters raised by a requested instruction are covered by the instructions given, no error results from a failure to submit the issues in the form

requested. Henneman v. McCalla, 260 Iowa 60, 69, 148 N.W.2d 447, 452–453 (1967). This complaint is without merit.

■ III. The defendant contractor next objected to the giving of Instruction 15, which informed the jury that if defendant contractor caused surface water to be discharged upon plaintiffs' property in substantially larger quantities or in a substantially different manner than it would naturally flow, it was no defense to plaintiffs' claim that the work was done in accordance with the plans and specifications.

Defendant contractor makes several complaints about this instruction but all are related to the failure to include a direction that liability could be found only if the contractor *negligently* caused water to be thrown upon plaintiffs' land.

We do not find this a valid objection. The instruction was not intended to deal with negligence. Other instructions did that. Both Instruction 12 and Instruction 13 pointed out that plaintiffs could recover only by showing defendant contractor was negligent. In addition the statement of issues in Instruction 1 based the claim solely on the negligence of defendants.

■ It is, of course, axiomatic that instructions must be read and considered together, not piecemeal. When that is done in this case, there is no room for jury misunderstanding or confusion. The necessity for a finding of negligence before defendant contractor could be held liable is clearly explained. Rosenau v. City of Estherville, 199 N.W.2d 125 (Iowa 1972); Robeson v. Dilts, 170 N.W.2d 408, 415 (Iowa 1969) and citations.

■ IV. Defendant contractor also argues the verdict for compensatory damages in the amount of $5500 was excessive. We content ourselves with pointing out the evidence on the cost of restoring plaintiffs' property ranged from $1400 to $6000. There is ample evidence to support the verdict. We find no basis for interfering with it.

V. This brings us to what is obviously the principal objection of defendant contractor—the punitive damages awarded by the jury. Four of the assigned errors deal with this issue. They assert the issue should have been withdrawn from the jury; the instruction on the matter was erroneous; and the amount of the award was excessive. We consider all assigned errors dealing with this subject together.

Plaintiffs' petition alleged the negligence of defendant contractor was "willful, wanton, malicious and in disregard of the rights of plaintiff." If proven, such conduct would permit an award of punitive damages.

■ Punitive damages are never allowed as a matter of right, but under certain circumstances may be allowed in the jury's discretion to punish the defendant and to discourage others from similar wrongful conduct. Claude v. Weaver Construction Co., 261 Iowa 1225, 1229, 158 N.W.2d 139, 143, 31 A.L.R.3d 1346 (1968); Sebastian v. Wood, 246 Iowa 94, 100, 66 N.W.2d 841, 844 (1954).

■ Most of the principles upon which punitive damages depend are announced and explained in the Sebastian and Claude cases heretofore cited. We need not repeat what was said there except to mention briefly the propriety of a judgment for punitive damages turns "more or less" on the facts peculiar to each case and rests largely in the discretion of the jury; no punitive damages are permitted unless actual and substantial compensatory damages are first shown; and the amount of punitive damages must generally be proportionate to the actual damages. See also on this question generally 22 Am.Jur.2d, Damages, sections 263–266, pages 357–361 and Amos v. Prom, Inc., 115 F.Supp. 127, 135 (U.S.D.C.1953).

With these matters in mind we return to the record now before us, which we hold justified the submission of the issue to the jury. Here, as in most such case, the most difficult issue is that of malice.

■ "Malice" need not be actual ill will or hatred toward another. When that state of mind is present, there is actual malice. However, more commonly in cases of this kind there is simply legal malice, which may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. We have also defined legal malice as the intentional commission of a wrongful act without just cause or excuse. Robinson v. Home Fire & Marine Insurance Company, 244 Iowa 1084, 1093, 59 N.W.2d 776, 782 (1953).

■ The present circumstances bear marked similarity to those in Claude v. Weaver Construction Co., supra. What we said in that case is also applicable here. At page 1235 of 261 Iowa Reports and page 146 of 158 N.W.2d this appears:

"What is termed reasonable use of one's property cannot be so extended as to include emission of noxious smoke and dust resulting in material damage to a neighboring property owner. And when, as in the case at hand, the evidence discloses continued contamination of the atmosphere by an offender, despite repeated complaints on the part of those resultantly injured, there exists a manifestation of disregard for the rights of others [which justifies an award of punitive damages.]"

With slight adjustments to fit the factual situation, that statement describes precisely what the jury could find here. Defendant contractor's own evidence shows it built a dike to divert the water from plaintiffs' land in May or June of 1968. When this failed to give relief, nothing else was done—for more than two years.

■ We hold, as we did in Claude, there was substantial evidence defendant contractor knowingly and intentionally, without just cause, "persisted in a course of conduct despite repeated protests and complaints of its harmful consequences, thereby disclosing such willful disregard for plaintiffs' rights as to create a jury issue relative to punitive damages."

Having decided the issue was for the jury, we still must deal with the objection to Instruction 20 and the complaint that the verdict was excessive.

■ Defendant contractor claims Instruction 20 was reversibly erroneous on several grounds—first, it included a statement about gross negligence when that was not pled; second, the language of the instruction was misleading and confusing to the jury.

We do not believe the instruction justifies a reversal. The trial court explained what "wanton, reckless and grossly negligent" meant as used in the instruction. While the use of the term "unusual lack of restraint" is not as clear as it might be, when the whole instruction is considered, it is apparent the trial court equated it with "heedlessness" and a lack of concern for the consequences of the acts complained of. We do not believe this could reasonably be held to have misled or confused the jury.

Other objections made to Instruction 20 are not presented or argued. We deem them waived.

■ Defendant contractor also urges us to find the amount of the punitive damages excessive. We find no basis upon which to interfere with the jury's finding in this regard.

■ As already noted, exemplary damages must bear some relationship to actual damages, but there is no formula by which this "relationship" may be determined. Claude v. Weaver Construction Co. and Amos v. Prom, Inc., both supra.

Precedent is of little value here and the standard by which the award is to be measured is so indefinite that it offers small help. The actual damages were substantial. Plaintiffs were forced to endure their inconvenience and comparative hard-

ship for more than two years. Under such circumstances we are unwilling to say $15,000 is so unrelated to the actual damages or that it was motivated by passion or prejudice. See 22 Am.Jur.2d, Damages, section 263, page 357; Charles v. Epperson & Company, 258 Iowa 409, 432, 137 N.W.2d 605, 618 (1965); Syester v. Banta, 257 Iowa 613, 629, 133 N.W.2d 666, 675 (1965).

■ Defendant contractor also seeks to assail the punitive damages because the trial court permitted the jury to find one defendant subject to such damages without holding both liable. See 22 Am.Jur. 2d, Damages, section 262, page 356. Without passing on the merits of this argument, we merely say no such issue was raised in the trial court and cannot be considered here for the first time. Katko v. Briney, 183 N.W.2d 657, 662 (Iowa 1971) and citations.

Finding no reversible error, we affirm the judgment against defendant contractor.

VI. The architect's appeal from the judgment for plaintiff raises two issues:

(1) Insufficiency of the evidence to support a judgment in favor of plaintiff; and

(2) Error in taxing costs under section 625.4, The Code.

VII. Plaintiffs alleged the architect furnished defective and inadequate plans and specifications which failed to provide properly for drainage of surface water. As we understand the architect's argument, it goes like this: This damage occurred during construction; the plans and specifications were not designed to provide for drainage of the building site until the project was complete; the plans and specifications were correct and accurate for their intended purpose. As a corollary the architect insists the obligation for "all safety precautions and programs until such time as the project was completed" rested solely and entirely with the contractor. Defendant architect raised the question of the insufficiency of evidence by motion for directed verdict, and, later, by motion for judgment notwithstanding the verdict. Both were overruled.

We cannot agree defendant architect can so easily wish off his duty to the public generally for harm resulting from negligence in furnishing plans and specifications which cause damage during the work itself. We reject the ingenious and startling theory that a person can, by contract with a third party, lay down his own rules as to when he will be liable to those whom his negligence injures.

If defendant architect negligently prepared plans and specifications and if plaintiffs were thereby damaged, defendant architect—like everyone else—is responsible for the consequences of that negligence. This is what the trial court instructed, and we believe it did so correctly.

■ There was substantial competent evidence to support the jury's verdict against the architect. We find the first assignment of error on the appeal to be without merit.

■ VIII. Defendant architect also objects because the costs were taxed equally between the two defendants, although the contractor was ordered to pay punitive damages while the architect was not. Therefore, it is argued, the contractor should bear the major portion of the costs. We do not think this necessarily follows. The judgment for compensatory damages was returned against both defendants. We believe the trial court acted well within its discretion under the statute in apportioning costs on the basis of the judgment for actual damages without considering the exemplary damage finding. There is no unfairness in this. The punitive damage award added nothing to the costs and the architect is not required to pay a portion of costs applicable solely to the contractor. We see no reason why the costs should be retaxed as the architect suggests.

We find no reversible error in the issues raised by defendant architect to the judg-

ment rendered in favor of plaintiffs and that judgment is therefore affirmed.

IX. There still remains for decision the troublesome issue of indemnity. Both defendants claimed such a right, and the trial court dismissed both petitions at the conclusion of the evidence.

We discuss and dispose of these issues as they were presented in the trial court. We do not reach the interesting question whether the contractor, having been adjudged guilty of conduct justifying a punitive damage award, may in any event secure indemnity from the architect, which was found guilty of ordinary negligence only.

We have had occasion to consider indemnity in recent years in a number of cases and under a variety of circumstances. Some of these are Hawkeye-Security Insurance Company v. Ford Motor Company, 199 N.W.2d 373 (filed June 29, 1972), earlier opinion at 174 N.W.2d 672 (1969); Ke-Wash Company v. Stauffer Chemical Company, 177 N.W.2d 5 (Iowa 1970); Peters v. Lyons, 168 N.W.2d 759 (Iowa 1969); Iowa Power and Light Company v. Abild Construction Company, 259 Iowa 314, 144 N.W.2d 303 (1966); Blackford v. Sioux City Dressed Pork, Inc., 254 Iowa 845, 118 N.W.2d 559 (1962); Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501 (1951).

There have also been several federal decisions interpreting our law with reference to indemnity. See Fairfield Engineering Company v. Winger Construction Company (S.D.Iowa 1969), 309 F.Supp. 64; Mayhew v. Iowa-Illinois Telephone Company (S.D.Iowa 1967), 279 F.Supp. 401; Epley v. S. Patti Construction Company (N.D.Iowa 1964), 228 F.Supp. 1. Many other authorities, both case and text, are cited throughout those opinions. We deem it unnecessary to repeat them here but all support the conclusions which we reach.

From these decisions a number of working rules have developed. They include these:

(1) There are generally four classes of cases in which a right to indemnity is recognized. See Iowa Power and Light Company v. Abild Construction Company, supra, 259 Iowa at 322, 144 N.W.2d at 308, and Peters v. Lyons, supra, 168 N.W.2d at 767.

■ (2) Fact questions should be submitted to the jury and the trial court, armed with these findings, should then determine the right to indemnity as a matter of law.

■ (3) The party claiming indemnity must both plead and prove its right to recover.

■ (4) The overriding purpose of indemnity is to place the loss on the one or ones who should rightfully and equitably bear it.

X. With these guiding principles in mind, we consider, first, the claim of the contractor for indemnity from the architect.

The contractor's petition for indemnity alleged the plans and specifications furnished by the architect were "faulty, defective and negligently prepared" and that any loss suffered by plaintiffs was caused by this negligence.

■ The trial court took this to be a claim that the architect was guilty of active or primary negligence while the contractor, if negligent at all, was only chargeable with passive or secondary negligence. We agree this is what the contractor pled; and, therefore, this is what he must prove. Ke-Wash Company v. Stauffer Chemical Company, supra, 177 N.W.2d at page 9.

The trial court found no jury question was presented on this theory, and we agree. We have earlier in this opinion affirmed the judgments in favor of plaintiffs against both defendants. We therefore take as established that each defendant was guilty of negligence which was a proxi-

mate cause of the damage suffered by plaintiffs.

The evidence showed conclusively the contractor knew of the drainage problems virtually as soon as work started; that the contractor independently took steps to correct it; that when this failed the contractor did nothing else; and that the decisions on these matters were the contractor's, not the architect's.

These facts are all established by the contractor's project manager and are undisputed. He also testified the architect's advice on how to eliminate the drainage problem was solicited but was not followed because it was deemed not "responsive."

Under these circumstances we cannot agree the contractor was led into error by the negligent building plans. It is true the plans were faulty, but the contractor knew this before taking any remedial steps to make drainage effective. The steps taken —and those *not* taken—could properly be found to constitute active negligence having no relation to the faulty plans supplied by the architect.

We have found no authority, and none has been cited, which permits a tort-feasor to act negligently over a period of two years, to repeatedly cause damage to an innocent third party by repetitious negligent conduct, and to thereafter claim his negligence was only passive because some other party had furnished him building plans which he knew to be inadequate some two years earlier.

■ Under the theory pled by contractor, and under the uncontroverted evidence in this record, we conclude the trial court was correct in dismissing the petition for indemnity because no fact question was engendered for jury determination. We affirm the trial court's conclusion that as a matter of law the contractor was not entitled to indemnity under this record.

XI. The architect's petition for indemnity presents a different situation although,

again, we agree with the conclusion reached by the trial court.

■ The architect asks indemnity on the ground the contract between the owner and the contractor provides that the architect shall be indemnified by the contractor. The architect's right to be indemnified must therefore be measured by the contract.

The trial court dismissed this petition for indemnity on two grounds: first, he held, since the architect prepared the contract it was a "trusted scrivener" and could not give itself an unconscionable advantage by providing for indemnity against its own negligence; and, second, in order to recover under the terms of the contract, the architect must prove itself to be a third-party beneficiary of the contract between the school district and the contractor. Since the architect could only be a donee beneficiary, such indemnity provision of the contract was void as a prohibited "gift" from a municipal corporation to the architect.

■ Neither of these grounds was raised by the contractor in its motion to dismiss the architect's petition. We believe the motion as made was good for the reasons there stated, and we prefer to base our decision on the ground relied upon by the contractor as hereafter set out. We therefore agree with the trial court's conclusion but not for his reasons.

The architect claims a right under the owner-contractor agreement. Assuming for our purposes that it is entitled to this right—a matter upon which we do not pass —he is limited by the provisions of that contract. We hold the contractor was correct in contending that the circumstances here bring the architect's claim within the specific exclusion from the indemnity provision of the contract, which provides:

"The obligations of the contractor under this paragraph [providing for indemnification of the architect] *shall not ex-*

tend to the liability of the architect, * * * arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the architect, his agents or employees provided such giving or failure to give is the primary cause of the injury or damage." (Emphasis supplied.)

It must be remembered this litigation has had as its basic precept negligence of the architect in providing faulty and defective plans and specifications. This has been the battleground throughout. It is the *only* negligence charged against the architect by the contractor. Yet this is the very negligence for which the contract says no indemnity shall be afforded.

Another provision of the contract—prepared, incidentally, by the architect—also negatives any right to indemnity under this record. Section 10.2.4 recites this:

"All damage or loss to any property * * * caused in whole or in part by the contractor, * * * shall be remedied by the contractor, *except damage or loss attributable to faulty drawings or specifications* or the acts or omissions of the owner or architect or anyone employed by either of them or for whose acts either of them may be liable, and not attributable to the fault or negligence of the contractor." (Emphasis supplied.)

The contractor's motion with reference to architect's petition for indemnity was as follows:

"J. P. Cullen & Son Corp. further moves the court to direct the jury to find in [its] favor and against [the architect] on the cross-petition of [said architect] for the reason that * * * any damages caused to the property [of plaintiffs] was due to defects in the drawings and specifications furnished by [the architect] and in such event, according to the contract * * *

[the architect] is not entitled to any right of indemnity against [the contractor] * * *."

 We believe the trial court should have dismissed the cross-petition on this ground. Therefore, although we disagree with his reasons, we affirm the trial court's order holding the architect was not entitled to indemnity from the contractor. It is, of course, proper to affirm the trial court if sufficient basis appears in the record even though the ruling was placed on other grounds. Binkholder v. Carpenter, 260 Iowa 1297, 1301, 152 N.W.2d 593, 595 (1967).

XII. Finding no reversible error, we affirm the several judgments of the trial court.

Affirmed.

All Justices concur, except MASON and McCORMICK, JJ., who take no part.