# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00518-CV

**Black + Vernooy Architects, J. Sinclair Black, and D. Andrew Vernooy, Appellants**

**v.**

**Lou Ann Smith; Jimmy Jackson Smith, Individually and as Next Friend of Rachel and Grayson Smith; and Karen E. Graveley, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-06-002615, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I respectfully dissent. Even if BVA's failure to identify and report the balcony defects was a breach of its duty, established under contract, to "endeavor to guard" against defects, such duty is owed only to the Maxfields, with whom BVA contracted, and does not extend to third-party visitors to the Maxfields' house such as the plaintiffs.

### The majority's extending BVA's duty to the plaintiffs is contrary to existing precedent

At the outset, I note that (1) BVA did not create the defect, as this is not a negligent design case, (2) BVA's contract is with the Maxfields alone, and under the terms of that contract BVA was not made liable to third-party visitors, and (3) we cannot hold BVA liable under a negligent-undertaking theory because the jury was not instructed regarding BVA's knowledge or the plaintiffs' reliance, *see Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837-39 (Tex. 2000). In this

context, then, it is paramount to observe that BVA did not have any right to control the construction. As the majority concedes, under the terms of the contract, BVA did not control the methods or means of construction. Also under the terms of the contract, BVA did not control the acts and omissions of the general contractor or subcontractors who constructed the house. Under the existing case law, because BVA had no control over the construction of the balcony, BVA has no duty to the plaintiffs with respect to such construction.[1]

One who exercises control (in this case, Nash, the general contractor) over a person who creates a dangerous situation (in this case, RodCon Company, a subcontractor) may be liable to third parties (in this case, the plaintiffs) for his negligence in exercising such control. *See Van Horn v. Chambers*, 970 S.W.2d 542, 546-47 (Tex. 1998) (finding no inherent control in physician-patient relationship that would impose duty on physician to protect third parties from patient); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309-11 (Tex. 1983) (imposing duty of reasonable care on employer to prevent harm to others from drunk employee based on control present in master-servant relationship). One's duty of care with respect to another party's work "is commensurate with" the control he retains over that work. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). The right to control can arise both by contract and by actual exercise of control. *See id.*

BVA did not retain—by contract or by its actions—any right to control the construction of the balcony. Indeed, the only Texas court to consider whether a duty to an injured

---

[1] The general contractor, Nash, is the party with the right to control the construction. The plaintiffs settled with Nash for $1.4 million.

2

third party arose under the same type of contract as at issue here[2] found no right to control the construction project under the contract and, therefore, no duty of care to the injured third party. *See Romero v. Parkhill, Smith & Cooper, Inc.*, 881 S.W.2d 522, 525-27 (Tex. App.—El Paso 1994, writ denied).[3]

Because BVA's contracting with the Maxfields to provide construction supervision services did not translate to a right to control the construction, BVA had no duty of care to third parties injured by a defect in the construction created by another party. The majority's holding to the contrary finds no support in case law.

In fact, not one of the cases cited by the majority, in holding that BVA's duty extends to the plaintiffs, provides any support for the conclusion that BVA, despite having no right of control over the construction project, owes a duty *to third parties* to discover a defect in that construction. First, the majority cites *Hunt v. Ellisor & Tanner, Inc.*, 739 S.W.2d 933 (Tex. App.—Dallas 1987, writ denied), for its statement of the scope of BVA's duty under its contract. In *Hunt*, the owners of a construction project sued the architects *with whom they had contracted* for defects in the construction of a parking deck. *See id.* at 935. The owners asserted only a breach of contract claim. *See id.* The court held that while the architects did not insure or guarantee the general contractor's

---

[2] The contract entered into by BVA is based on nationally used forms promulgated by the American Institute of Architects.

[3] Other jurisdictions that have addressed this type of contract have reached the same conclusion. *See, e.g.*, *Hobson v. Waggoner Eng'g, Inc.*, 878 So. 2d 68, 73-76 (Miss. Ct. App. 2003); *Shepherd Components, Inc. v. Brice Petrides-Donohue & Assocs.*, 473 N.W.2d 612, 615-17 (Iowa 1991); *Yow v. Hussey, Gay, Bell & DeYoung Int'l*, 412 S.E.2d 565, 567-68 (Ga. 1991); *Welch v. Grant Dev. Co.*, 466 N.Y.S.2d 112, 114-16 (N.Y. Sup. Ct. 1983); *Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.*, 267 N.W.2d 13, 15-16 (Wis. 1978).

work, they could nonetheless be found liable to the owners based on their contract with the owners under which they agreed to "endeavor to guard" against defects. *See id.* at 937. There were no third-party visitors involved in *Hunt*. Thus, the court did not address the issue of whether the architect's duty under the contract would have extended to a third party. *See id.*

The majority then cites *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586 (Tex. App.—Fort Worth 2008, pet. denied), for the proposition that BVA is not shielded from negligence liability by the plaintiffs' not being third-party beneficiaries of the contract. In *Dukes*, four people had drowned in a city-owned fountain, and their representatives sued the architects who had contracted with the city to assist with the fountain's earlier renovation. *See id.* at 590. However, the court concluded that the architects' contract with the city did not impose a duty to perform a safety review. *See id.* at 594-95. As a result, the court did not proceed to address the issue of whether such a duty would have extended to third-party visitors. *See id.*

The majority relies on *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336 (Md. 1986), to hold that an architect's duty of care extends to "those persons foreseeably subjected to the risk of personal injury" resulting from the architect's negligence. *See id.* at 343-44. However, unlike BVA, the architects in *Whiting-Turner* did have control over the construction of the building. Specifically, the architects either were "supervising architects" or had agreed by contract "to inspect the building and to certify to the Building Inspection Department of Ocean City, Maryland, that the building was constructed pursuant to the approved building permit in accordance with the plans and specifications submitted with the original permit application and that the building was ready for occupancy." *Id.* at 339. Thus, *Whiting-Turner* does

4

not provide precedent for this case, where BVA, by contract, was not responsible for the finished construction but merely agreed to "endeavor to guard" against defects.

The majority relies on two Iowa cases—*Evans v. Howard R. Green Co.*, 231 N.W.2d 907 (Iowa 1975), and *McCarthy v. J.P. Cullen & Son Corp.*, 199 N.W.2d 362 (Iowa 1972)—for its assertion that an architect cannot rely on the provisions of its contract with the owner to avoid liability to a third party for negligence. However, both cases involved negligent *design*. *See Evans*, 231 N.W.2d at 910; *McCarthy*, 199 N.W.2d at 370. A person has a duty to prevent injury to others when he negligently creates a dangerous situation. *See Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 632-33 (Tex. 1976). This case is not a negligent design case. BVA did not create the construction defect. Thus, neither *Evans* nor *McCarthy* provides any precedent applicable to this case.

Finally, the majority cites two Texas cases—*Hideca Petroleum Corp. v. Tampimex Oil International, Ltd.*, 740 S.W.2d 838 (Tex. App.—Houston [1st Dist.] 1987, no writ), and *Shatterproof Glass Corp. v. James*, 466 S.W.2d 873 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.)—for the proposition that the "trend" is to dispense with privity requirements in negligence suits. The majority states these cases' holdings too broadly. In both cases, the court was construing *negligent misrepresentation* claims. *See Hideca Petroleum*, 740 S.W.2d at 846-47; *Shatterproof Glass*, 466 S.W.2d at 877-80. This case is not a negligent misrepresentation case. Such cases involve entirely different analyses. *Compare* Restatement (Second) of Torts § 552 (1977) (in negligent misrepresentation context, extending party's liability to any person whom the information is intended to benefit or influence), *with id.* §§ 314, 315 (1965) (in general negligence context, imposing duty to protect another from third person if duty exists to control such third person).

5

In sum, an architect who creates a design defect or has control over a construction project may have a duty not to injure third-party visitors to the location. There is no precedent, however, for the majority's holding that an architect who neither creates the defect nor controls the project, but instead agrees by contract with the owner to "endeavor to guard" against construction defects, can nonetheless be liable, under a negligence theory, to a third-party visitor.

***Applying the risk-utility balancing test results in declining to impose a new common-law duty***

Lacking precedent to support its holding, the majority turns to the risk-utility balancing test. In determining whether to impose a new common-law duty, a court is to consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the actor. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). In addition, a court may consider whether one party has superior knowledge of the risk, whether one party has a right to control the actor who caused the harm, and whether legislative enactments evidence the adoption of a particular public policy significant to the recognition of a new common-law duty. *See Thapar v. Zezulka*, 994 S.W.2d 635, 639-40 (Tex. 1999); *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993).

The plaintiffs seek to impose a duty of care on an architect—such duty being based on the architect's contracting with the structure's owner to "endeavor to guard" against construction defects—to protect any foreseeable visitor to the structure from identifiable defects. The majority holds that such a duty should be imposed. However, although referencing the balancing test, the majority fails to consider all the factors set out by the Texas Supreme Court. Instead, the majority concludes, initially, that a risk of injury to the plaintiffs existed and was foreseeable

6

and, then, that any burden from extending an architect's duty to third parties does not outweigh the risk and likelihood of injury.[4]  Unlike the majority, I would consider *all* the relevant factors and would, consequently, conclude that BVA's duty should not be extended to third-party visitors such as the plaintiffs.

I agree with the majority that the initial considerations weigh in favor of extending an architect's duty of care.  When an architect fails to identify and report a structural defect, a risk of harm can exist, whether structural damage or physical injury therefrom.  Likewise, when such defect implicates critical safety or structural integrity concerns, one would suspect an increased likelihood of physical injury.  It is also foreseeable that such risk of physical injury includes harm to third-party visitors, as it would seem to be a rare case where no person would use a structure other than the owner with whom the architect contracts.

However, we must weigh those factors against "the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the actor."  *Bird*, 868 S.W.2d at 769; *J.P. Morgan Chase Bank v. Texas Contract Carpet, Inc.*, 302 S.W.3d 515, 533 (Tex. App.—Austin 2009, no pet.).  Regarding the social utility of BVA's conduct, under the industry-standard form used by BVA, the architect agrees to report all

---

[4]  The majority's basis for such conclusion is that "the duty applies only in very limited circumstances such as those present here."  In other words, the majority bases its creation of a new common-law duty on its determination that its holding is sufficiently narrow.  While constructing its narrow holding, however, the majority employs an overbroad approach.  Under the majority's approach to the risk-utility balancing test, as long as a court can phrase the applicability of the duty of care so as to confine it to the specific facts of the case before the court, a duty will inevitably be imposed to protect against any foreseeable harm.  This cannot be the case, however, because "foreseeability alone is not a sufficient basis for creating a new duty." *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994).

7

known deviations from the design. In addition, the contract gives the architect the authority to require inspection of the structure. There is significant social utility in having the architect responsible for designing a structure also agree to provide some oversight regarding the structure's being built in accordance with the design. Indeed, the majority acknowledges several instances in which BVA's services were beneficial, as multiple deviations from the design were identified and corrected.

The magnitude of the burden of guarding against the injury would also be significant. It is noteworthy in this case that BVA did not notice the defect. This is not a case, then, of an architect noticing a defect but not reporting it despite having a duty to report known deviations. The burden the plaintiffs seek to impose on architects is to identify every defect. While the majority attempts to minimize this burden by limiting the duty to "observable" and "significant" deviations that implicate "critical safety and structural integrity concerns," it seems unlikely that one would know a defect's significance until the defect is actually identified. It would be a considerable burden, then, to require an architect to have detected all defects that, in hindsight, turn out to be "significant" to a "critical" issue.

The consequences of placing such a burden on architects would likewise be significant. As the majority observes, under the terms of its industry-standard contract, BVA did not agree to be guarantor or insurer of the work of the general contractor. However, this is the practical consequence of the duty the majority places on BVA. Imposing liability for "critical" matters has the foreseeable impact of making the architect the guarantor over the matters of construction for which liability is likely to be most costly, and it would expose him to lawsuits brought by parties he

8

could not identify at the time of entering into the contract. To protect against liability, the architect would need to effectively take on the duty of care of a guarantor so as to ensure that all critical matters were fully observed.

Holding BVA liable would also have the consequence of curtailing the freedom of the architect and owner to establish by contract the nature and scope of the architect's services. *See J.P. Morgan Chase Bank*, 302 S.W.3d at 534. Section 2.6.5 of the industry-standard contract requires BVA to "endeavor to guard" against defects, but does not require "exhaustive or continuous on-site inspections." Section 2.6.6 requires BVA to report only "known deviations" and states that BVA:

> shall not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents [and] shall not have control over or charge of and shall not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons or entities performing portions of the Work.

Section 9.7 states, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect." Had the Maxfields wanted BVA to be guarantor or insurer, such services would likely have required a higher payment. Instead, the Maxfields contracted for an intermediate level of services—obtaining from BVA some oversight but not a guarantee. Under this type of agreement, the owner obtains an architect's assistance without having to pay for a full guarantee, and the architect provides assistance without having to incur the type of liability involved with providing a guarantee. Imposing a duty on architects such as BVA to third parties under this type of industry-standard agreement would, I

9

believe, reduce the likelihood of architects in Texas entering into such agreements in the future or, at the very least, increase the compensation required for such services, despite the significant social utility of such agreements.

The remaining considerations also weigh against extending an architect's duty to third parties. Regarding whether BVA had superior knowledge, there is no allegation that BVA's design was not sufficiently communicated to the general contractor or the subcontractor who constructed the balcony. Thus, while BVA may have had superior knowledge regarding why the balcony required certain methods of construction, BVA's knowledge regarding what methods were actually required in accordance with the design—i.e., the metal support pipes and steel plate tabs, the joist hanger, and the bolts, rim joist, and wood blocking—was not superior to that of Nash (the party with the right to control the balcony's construction) or RodCon (the party who constructed the balcony). Likewise, an architect's knowledge of the importance of properly attaching a second-floor balcony would not be superior to that of any other party involved in the balcony's construction.

Regarding the right to control, as discussed above, under the terms of the industry-standard contract BVA had no right to control the construction. Instead, RodCon performed its own construction activities, and Nash possessed by contract the responsibility for construction being done in accordance with the design.

Finally, there have been no legislative enactments identified by any party in this case that would evidence the adoption of a particular public policy in favor of imposing a duty of care on an architect under these circumstances. In this regard, I note that we should show "reluctance, as an intermediate court of appeals, to recognize a new common-law duty that has no

10

existence in established law." *See id.* at 535 (citing *Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002)).

Having weighed all the relevant factors, I would conclude that the factors weighing against the imposition of a new duty on architects outweigh those in favor. This is particularly the case when, as here, the general contractor had a duty to inspect the subcontractor's work and to warrant and guarantee that work, and the injured third parties could (and did) sue the general contractor for its breach of that duty. Accordingly, I would decline to recognize a new common-law duty under the circumstances of this case.

### *Conclusion*

The majority has created a negligence duty without any precedent, by the use of an artificially truncated balancing test. That a tragedy occurred does not justify the ill-advised and far-reaching duty which the majority has created. I would hold, as a matter of law, that BVA had no duty to the plaintiffs, and I would reverse the judgment of the district court and render judgment in favor of BVA.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed: December 8, 2010

11