Gerald L. CLAUDE and Virginia G. Claude, Appellees,

v.

WEAVER CONSTRUCTION COMPANY, Appellant.

No. 52890.

Supreme Court of Iowa.

April 9, 1968.

Oppen & Wessels, Iowa Falls, and Lundy, Butler, Wilson & Hall, Eldora, for appellant.

Whitesell Law Firm, Iowa Falls, for appellees.

RAWLINGS, Justice.

Action at law by homeowner plaintiffs for damages resulting from private nuisance created by defendant operated asphalt plant resulted in judgment on verdict adverse to defendant, and it appeals. We affirm.

Defendant is a closely held family type corporation, Wood Weaver, sometimes hereafter referred to as Weaver, being the president.

About 1945, defendant acquired by lease a relatively small limestone quarry located east of property later purchased by plaintiffs, the two tracts being separated by a county road. Size of the quarry has since been substantially increased.

November 4, 1957, plaintiffs purchased and commenced occupancy of a house located on land situated at the easterly edge of the town of Alden.

April 1966, an oil burning auxiliary asphalt plant or pug mill was set up in the quarry at direction of defendant to assist it in a highway 69 resurfacing project. This plant was located on the west side of the quarry about one or two city blocks from the Claude home.

Plaintiffs claim offensive dust and smoke from the subject mill caused injury to them and their property.

Trial to jury resulted in an award of damages to plaintiffs, $500 compensatory and $1100 exemplary.

The sole issue presented on appeal is whether evidence presented was sufficient to generate a jury issue as to punitive damages.

■ I. This being an action at law it is reviewable only on errors assigned. Rule 344(a) (3), R.C.P., and Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, 450.

■ Errors neither assigned nor argued on appeal present no question for review. Associates Discount Corp. v. Held, 255 Iowa 680, 683–684, 123 N.W.2d 869.

■ II. While there must be some substantial evidence on which to base an instruction, all relative and material evidence, including justifiable inferences, favorable to plaintiff, must be accepted at face value in determining whether a jury issue is created. Nizzi v. Laverty Sprayers, Inc., Iowa, 143 N.W.2d 312, 317; Kiger v. Meehan, 253 Iowa 746, 748, 113 N.W.2d 743; Kuehn v. Jenkins, 251 Iowa 718, 724, 100 N.W.2d 610; McGrean v. Bos Freight Lines, 240 Iowa 318, 323, 36 N.W.2d 374; and Sanderson v. Chicago, M. & S. P. R. Co., 167 Iowa 90, 101, 149 N.W. 188.

■ Our function is not to weigh the testimony, but to determine whether there was substantial evidence presented upon which a jury could find for plaintiffs on their claim for punitive damages. In that regard we view the evidence in a light most favorable to the party prevailing in the trial court. Rule 344(f) (1), (2), R.C.P., and Jennings v. Farmers Mutual Insurance Association, 260 Iowa 279, 149 N.W.2d 298, 300.

III. As previously stated, plaintiffs were awarded actual damages resulting from presence of the private nuisance created by defendant operated asphalt plant.

■ With reference to the foregoing, this court said in Bates v. Quality Ready-Mix Co., Iowa, 154 N.W.2d 852, 857: "The term 'private nuisance' refers to an actionable interference with a person's interest in the private use and enjoyment of his land." See also Jones v. Rumford, 64 Wash.2d 559, 392 P.2d 808, 809–810; 66 C.J.S. Nuisances § 2, page 730; 39 Am.Jur., Nuisances, section 9, page 287; 12 Drake L. Rev. 107; and Annos. 47 A.L.R.2d 490. See generally Kellerhals v. Kallenberger, 251 Iowa 974, 979–982, 103 N.W.2d 691, and Riter v. Keokuk Electro-Metals Co., 248 Iowa 710, 720–725, 82 N.W.2d 151.

Touching on the matter at hand we held, in Iverson v. Vint, 243 Iowa 949, 952, 54 N.W.2d 494, an action for damages from nuisance is not predicated on negligence. It is a condition, not an act or failure to act. If the wrongful condition exists, the person responsible for its existence is liable for resulting damage to others. See also 12 Drake L. Rev. 108.

Since judgment entered on the compensatory award is not challenged, it stands as a finality from which it follows existence of a nuisance as alleged was here established. See Johnson v. Iowa State Highway Commission, 257 Iowa 810, 812, 134 N.W.2d 916, and 5 C.J.S. Appeal & Error § 1272, page 163, 168–169.

Furthermore, actual compensation allowed must, under the circumstances, be accepted as reasonable and proper.

IV. This brings us to the matter of exemplary or punitive damages.

Dealing with that subject we said in Sebastian v. Wood, 246 Iowa 94, 100–101, 66 N.W.2d 841, 844: "A reference to the nature of exemplary or punitive damages, sometimes designated as 'smart money', and the purposes of their allowance may be helpful. Their main purpose as indicated in their designation is that they are awarded under proper circumstances and conditions as a punishment for the particular party involved and as a warning and an example to him in the future, and to all others who may offend in like manner. The award of such damages constitutes an effective deterrent to such offenders, and a salutary protection to society and the public in general. They are not recoverable as a matter of right and are only incidental to the main cause of action, and can be awarded only when actual and substantial damages are allowed. They are in no way compensatory, and while they have a secondary purpose in adding to the complainant's award because injury to him may well have been aggravated by its malicious, oppressive, willful, wanton, or reckless causation, yet, whatever benefit he so receives comes to him not as compensation for the wrong done him but as purely incidental and by the grace and gratuity of the law, as punishment of the wrongdoer, and as an example and deterrent to others."

With regard to the foregoing see also Legal Seminar, Iowa Academy of Trial Lawyers, October 1963, page 71; Prosser, Law of Torts, Third Ed., Hornbook Series, page 9; 25 C.J.S. Damages § 117(1), page 1107; and 22 Am.Jur.2d, Damages, sections 236–237, pages 322–325.

V. Always troublesome is that element essential to an award of punitive damages commonly referred to as "malice". In fact, some authorities look upon its usage in connection with the subject here presented as a misnomer.

This was demonstrated in Amos v. Prom, D.C., 115 F.Supp. 127, 135–136, where the court said: "There has been some confusion in the discussion of this term (malice) in the Iowa cases, but basically Iowa law has recognized three terms for malice. First there is malice in the popular sense of ill will or hatred, sometimes termed 'express malice.' Second there is 'malice in fact.' Third there is 'malice in law.' The confusion arises primarily because the latter two terms are both characterized as 'legal malice' as distinguished from 'express' or 'lay' malice. The distinction has been stated by the Iowa Supreme Court, speaking through Justice McClain, as 'Malice in law is where malice is established by legal presumption from proof of certain facts, as in actions for libel * * *. Malice in fact is to be found by the jury from the evidence in the case. They may infer it from want of probable cause. But it is well established that the plaintiff is not required to prove express malice, in the popular signification of the term, as that defendant was prompted by malevolence, or acted from motives of ill will, resentment, or hatred toward the plaintiff. It is sufficient if he prove it in its en-

larged legal sense.' Connelly v. White, supra [122 Iowa 391, 98 N.W. 145].

"The Iowa Supreme Court recently referred to the categories of malice in the case of Robinson v. Home Fire & Marine Ins. Co., Iowa 1953, 59 N.W.2d 776. The Court in that case held that slander was not proved where the speaker had a qualified privilege unless the words were spoken with actual malice. At page 782 of 59 N.W.2d, the Court said, 'Actual malice—frequently called express malice or malice in fact—means personal spite, hatred or ill-will. It is not merely malice in law—the intentional doing of a wrongful act without just cause or excuse.'

"While it is not entirely clear whether the Iowa decisions regard 'malice in fact' as a descriptive term for 'legal malice' or as a synonym for 'express malice,' it is apparent that the 'malice' required to permit an award of exemplary damages is something less than actual ill-will or express malice and may be termed 'legal malice' for want of a better expression."

Continuing the court said, loc. cit., 136–137: " * * * the intentional doing of a 'wrongful act' without justification will permit an inference of the wicked state of mind. Yet it is apparent that many wrongful or illegal acts may be intentionally committed from motives wholly apart from any malice or evil intent directed toward the person who happens to suffer by the action, as where defendant is motiviated by a desire for gain and has no feeling at all for those injured by him.

"Therefore, when the law reaches this last stage, as it has in Iowa, it is no longer 'malice' which is required but the 'something else' from which malice is said to be presumed. See Schnathorst v. Williams, 1949, 240 Iowa 561, 36 N.W.2d 739, 10 A.L.R.2d 1199; Wilson v. Lapham, 1923, 196 Iowa 745, 195 N.W. 235; Jenkins v. Gilligan, 1906, 131 Iowa 176, 108 N.W. 237, 9 L.R.A.,N.S., 1087. 'It is enough (for legal malice) if it be the result of any improper or sinister motive and in disregard of the rights of others.' 108 N.W. at page 238. The rule would seem to be: exemplary damages may be awarded where defendant acts maliciously, but malice may be inferred where defendant's act is illegal or improper; where the nature of the illegal act is such as to negative any inference of feeling toward the person injured, and is in fact consistent with a complete indifference on the part of defendant, liability for examplary damages is not based upon the maliciousness of the defendant but is based, rather, upon the separate substantive principle that illegal or improper acts ought to be deterred by the exaction from the defendant of sums over and above the actual damage he has caused. See Mendenhall v. Struck, 1929, 207 Iowa 1094, 224 N.W. 95, 97, 'Malice does not necessarily mean spite or hatred, but it means the doing of an actual wrong in itself without just cause or excuse.' "

And in Newman v. Nelson, (10 Cir.), 350 F.2d 602, 604–605 is this apt statement: " * * * the mere commission of a nuisance justifying an award of actual damages would be insufficient to justify the assessment of punitive damages as a penalty. In other words, to be liable for actual damages one need only create or commit a nuisance, but to be punished for it he must create and persistently maintain it with a reckless disregard for the rights of others."

In addition to authorities heretofore cited, see Charles v. Epperson & Co., Inc., 258 Iowa 409, 431–432, 137 N.W.2d 605; Syester v. Banta, 257 Iowa 613, 628–629, 133 N.W.2d 666; Rusch v. Phillips Petroleum Co., 163 Kan. 11, 180 P.2d 270, 276; 25 C.J.S. Damages § 123(4), page 1141; 22 Am.Jur. 2d, Damages, sections 249–253, pages 340–346; and 8 Drake L.Rev. 36, 44.

VI. As heretofore indicated, it is well established in this jurisdiction, punitive damages cannot be allowed in the absence of an actual damage award. This court has consistently adhered to that principle. See

Syester v. Banta, 257 Iowa 613, 627, 133 N.W.2d 666; Clark Bros. v. Anderson & Perry, 211 Iowa 920, 924, 234 N.W. 844; 25 C.J.S. Damages § 118, page 1121; 22 Am.Jur. 2d, Damages, section 241, page 328; and Legal Seminar, Iowa Academy of Trial Lawyers, October 1963, page 73; and Annos. 17 A.L.R.2d 527, 530.

■ VII. An Allowance of exemplary damages turns more or less on the facts peculiar to any case, and rests largely in the discretion of the jury, but the amount allowed must generally be proportionate to actual damages granted.

This court so held in Hartman v. Peterson, 246 Iowa 41, 46–47, 66 N.W.2d 849. See also Bankers Life & Casualty Company v. Kirtley, (8 Cir.), 307 F.2d 418, 424; 25 C.J.S. Damages § 126(1), page 1159; 22 Am.Jur.2d, Damages, section 265, page 359; and Annos. 17 A.L.R.2d 527, 548.

■ Incidentally, no remittitur is permitted in this state if punitive damages awarded are found to be excessive. The only remedy in that event is to set aside the recovery therefor. Mallinger v. Brussow, 252 Iowa 54, 64, 105 N.W.2d 626; Hartman v. Peterson, supra; and citations. See also Bankers Life & Casualty Company v. Kirtley, supra.

But, as previously stated, defendant is content to stand upon the premise no fact issue as to exemplary damages was established by plaintiffs, which means we are not here concerned with amount awarded by way of punishment.

■ VIII. Error asserted in the case at bar is broad, but liability of a corporate entity, for punitive damages, is neither urged nor discussed by defendant. As a result we are not here called upon to consider or resolve that issue and do not do so. Stated otherwise, the question as to liability of a corporation for exemplary damages is not involved in this appeal. However, with regard to the foregoing see Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U.S.

317, 2 S.Ct. 719, 726–727, 27 L.Ed. 739; Kelite Products v. Binzel, (5 Cir.), 224 F.2d 131, 144; Amos v. Prom, D.C., 115 F.Supp. 127, 137; Toole v. Richardson-Merrell Inc., Cal.App., 60 Cal.Rptr. 398, 414–415; Algozino v. Welch Fruit Products Co., 345 Ill. App. 135, 102 N.E.2d 555, 560; 25 C.J.S. Damages § 125(4), page 1153; 19 C.J.S. Corporations § 1263, page 948; 39 Am.Jur., Nuisances, Section 32, page 313; 13 Am. Jur., Corporations, section 1130, page 1056; and Prosser, Law of Torts, Third Ed., Hornbrook Series, page 12.

■ IX. The determinative issue before us is whether, under the circumstances revealed by the record, "malice" or reckless disregard for the rights of others is disclosed.

Prior to placement and operation of the pug mill here involved, an asphalt plant had been operated in the quarry area. On that occasion a civil action for nuisance resulted in an award of damages. This was at all times here concerned known to Weaver.

Nevertheless, defendant claims asphalt plants have since been improved, the one involved in the case at bar being equipped with a dust collector, washer, and adapted to use with higher type fuel which produces a cleaner smoke than before.

At time the subject plant was erected, plaintiffs and other nearby residents manifested concern. Weaver assured them the mill would be shut down whenever the presence of offending dust and smoke was reported. The machinery was placed on high ground because of the smoke hazard resulting from use of a short smoke stack, and at a point more readily accessible to trucks used in the hauling process.

Weaver indicated interest in public relations but refused to relocate the mill because of cost involved. It functioned about one month and operations were finally discontinued only when the highway project was completed.

The Claudes were not affected by smoke and dust every day, but it was quite bad two days, and offendingly present five or six other days.

April 29, 1966, smoke and dust from the plant covered plaintiffs' property, similar to a dust storm but coarser and five times worse. Complaint was made to Weaver but the mill continued operating.

The next day plaintiffs and some neighbors met to discuss the problem. Weaver, though not invited, attended the meeting and again promised corrective action whenever notified.

May 27th, complaints were made but plant work continued intermittently.

May 28th, Mrs. Claude and two neighbor ladies complained. There is some dispute as to conditions existing that day, but the plant foreman offered money to one of these women because of the plant created mess. In any event mill operations continued.

Early forenoon, May 31st, presence of offensive dust and smoke was reported. This time Weaver was not present but the plant was closed for a short time. On returning he drove past the Claude home where people were gathered, went on to the mill site, and ordered it again placed in operation. Plaintiffs called their attorney who in turn talked to Weaver, but he refused to then close down and did not do so until about noon.

On several occasions the mill was not operated due to rain, breakdowns or unavailability of trucks.

Defendant generally contends manifestation of solicitude, use of modern equipment, and efforts to eliminate or reduce offensive dust and smoke bar plaintiffs' right to recover punitive damages. This is to us a novel but nonpersuasive approach. Stated otherwise, we do not believe full play of the facts allow defendant to hide behind any such ineffective barricade.

That which an offending party says or professes may be important, but is quickly obliterated by counterprevailing conduct of such nature as to disclose the declarations made were in fact meaningless. In a case such as that here presented, it is actual conduct which controls, not statements of interest, sympathy, or concern.

What is termed reasonable use of ones property cannot be so extended as to include emission of noxious smoke and dust resulting in material damage to a neighboring property owner. And when, as in the case at hand, the evidence discloses continued contamination of the atmosphere by an offender, despite repeated complaints on the part of those resultantly injured, there exists a manifestation of disregard for rights of others.

Furthermore, we are satisfied it is no defense to show the nuisance causing instrumentality is built in accord with latest approved methods or operated skillfully. Conceding for our purpose the most modern machinery was used in a claimed effort to alleviate a potentially offensive situation, it still remains a condition amounting to nuisance, was in fact created and maintained, as disclosed by the evidence, including exhibits presented. See Vaughn v. Missouri Power & Light Co., Mo.App., 89 S.W.2d 699, 702, and Jones v. Rumford, 64 Wash. 2d 559, 392 P.2d 808, 809–810.

X. Viewed in a light most favorable to plaintiffs, it is to us evident some substantial evidence was presented disclosing defendant knowingly and intentionally, without just cause, persisted in the maintenance of a private nuisance despite repeated protests and complaints of its harmful consequences, thereby disclosing such willful disregard for plaintiffs' rights as to create a jury issue relative to punitive damages.

Affirmed.

All Justices concur, except LARSON, J., who concurs in the result.