PAGE COUNTY APPLIANCE
CENTER, INC., Appellee,

v.

HONEYWELL, INC., and ITT Electronic
Travel Services, Inc., Appellants,

and Kay Crowell d/b/a Central Travel
Service, Defendant.

ITT ELECTRONIC TRAVEL
SERVICES, INC., Appellee,

v.

HONEYWELL, INC., and Honeywell In-
formation Systems, Inc., A Wholly
Owned Subsidiary of Honeywell, Inc.,
Appellants.

No. 83–182.

Supreme Court of Iowa.

March 14, 1984.

Curtis Hewett of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellant ITT Electronic Travel Services, Inc.

Gerald P. Laughlin, Michael G. Lessmann and Kirk S. Blecha of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim and Ron M. Bitting of Turner, Jones, Bitting & O'Meara, Clarinda, and Terry J. Grennan of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, Neb., for appellant Honeywell, Inc.

Jon H. Johnson and Robert F. Leonard of Leonard & Johnson, P.C., Sidney, for appellee Page County Appliance Center, Inc.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Plaintiff Page County Appliance Center, Inc. (Appliance Center), sued Honeywell, Inc. (Honeywell), and ITT Electronic Travel Services, Inc. (ITT), for nuisance and tortious interference with business relations. Defendants appeal from judgment entered on jury verdicts awarding compensatory and punitive damages. Honeywell appeals from a judgment rendered against it on ITT's cross-claim for indemnification. We reverse and remand for new trial.

Appliance Center has owned and operated an appliance store in Shenandoah, Iowa, since 1953. In 1975 the store was acquired from his father by John Pearson, who sold televisions, stereos, and a variety of appliances. Before 1980 Pearson had no reception trouble with his display televisions. In early January 1980, however, ITT placed one of its computers with Central Travel

Service in Shenandoah as part of a nationwide plan to lease computers to retail travel agents. Central Travel was separated by only one other business from the Appliance Center. This ITT computer was manufactured, installed, and maintained by Honeywell.

Thereafter many of Pearson's customers told him his display television pictures were bad; on two of the three channels available in Shenandoah he had a difficult time "getting a picture that was fit to watch." After unsuccessfully attempting several remedial measures, in late January 1980, he finally traced the interference to the operations of Central Travel's computer. Both defendants concede Pearson's problems were caused by radiation leaking from the Honeywell computer.

Pearson discussed the problem with Kay Crowell, owner of Central Travel. She placed a call to ITT's president in New York. Although he was unavailable, ITT personnel apparently notified Honeywell. ITT's only contact with Pearson was through a telephone call some ten months later. At that time Pearson told ITT's sales representative that Honeywell was working on the problem; he made no effort to follow up on ITT's interest in the problem.

Honeywell indeed was working to correct the situation, and had been since February 1980. Honeywell technicians made repeated trips to make various unsuccessful adjustments to the computer. They found the computer was operating properly; the interference-causing radiation was a design and not a service problem. Pearson then telephoned Armando Benitez, the technicians' supervisor. Pearson testified Benitez told him Honeywell was "way over budget" on the Central Travel computer and that "if you don't like it, you can move."

Nonetheless, in early fall of 1980 Honeywell sent out Phil Brzozoski, one of its engineers from Boston. According to Pearson, when he asked Brzozoski why it had taken him so long to come, the latter replied he would not have been there at all had Pearson not instituted suit; that was the way big business worked. Kay Crowell, admittedly Pearson's friend, testified Brzozoski told her the delay was "good business." Pearson in fact did not bring suit until December 22, 1980, although his counsel sent demand letters to Honeywell and ITT in October 1980. At trial a top Honeywell employee testified it was not company policy to await lawsuits before taking remedial action.

The Honeywell engineers effected a 70 percent improvement in the television reception by certain modifications of the computer in the fall of 1980. Pearson, still dissatisfied, started this action in December. While the suit was pending, Honeywell further modified the computer, finally alleviating Pearson's problems in May 1982.

At trial a Honeywell senior staff engineer admitted the technology to manufacture a non-radiation-emitting computer was available long before it developed this computer, but opined it would have been neither cost nor consumer effective to utilize that technology. He testified Honeywell believed it had corrected Pearson's problems in the fall of 1980.

The Appliance Center's case against Honeywell and ITT finally was submitted to the jury on the theories of nuisance and tortious interference with prospective business relations. It asked for only injunctive relief against Kay Crowell, doing business as Central Travel Service. The latter's motion for summary judgment was sustained. The jury found for the Appliance Center against the remaining defendants on both theories, and further found the Appliance Center should recover $71,000 in compensatory damages and $150,000 in exemplary damages. Following jury trial, Kay Crowell's cross-claim against Honeywell and ITT's cross-claim against Honeywell were submitted to the court. Crowell's cross-claim was dismissed. She did not appeal and is not involved in this proceeding. Trial court awarded ITT full indemnity against Honeywell, in the amount of $221,-000, together with attorney fees and costs.

Both defendants appeal from the judgment in favor of Appliance Center; Honeywell additionally appeals from the judgment awarding ITT indemnity.

Defendants raise a number of claimed trial court errors, discussed in the divisions that follow.

I. *Should Trial Court Have Granted Defendants' Motions for Directed Verdict and for Judgment Notwithstanding the Verdict on the Nuisance Count?*

A. ITT argues trial court should have granted its motions for directed verdict because the Appliance Center property was being used for a purpose peculiarly sensitive to computer emissions, and because plaintiff did not prove ITT substantially participated in the creation or maintenance of the alleged nuisance.

Certain general principles govern our review here. In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion is made. Iowa R.App.P. 14(f)(2). We examine the evidence in the same light to determine whether there was a jury issue. *Lewis v. Baker*, 251 Iowa 1173, 1176, 104 N.W.2d 575, 577 (1960).

Our analysis of ITT's first contention must start with Iowa Code section 657.1, which in relevant part states:

> Whatever is ... an obstruction to the free use of property, so as essentially to interfere with the ... enjoyment of ... property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

■ Narrowing our focus, we note the Appliance Center is alleging a "private nuisance," that is, an actionable interference with a person's interest in the private use and enjoyment of his or her property. *Larsen v. McDonald*, 212 N.W.2d 505, 508 (Iowa 1973). It also is apparent that if Central Travel's computer emissions constitute a nuisance it is a "nuisance per accidens, or in fact"—a lawful activity conduct-

ed in such a manner as to be a nuisance. *Pauly v. Montgomery*, 209 Iowa 699, 702, 228 N.W. 648, 650 (1930).

■ Principles governing our consideration of nuisance claims are well established. One's use of property should not unreasonably interfere with or disturb a neighbor's comfortable and reasonable use and enjoyment of his or her estate. A fair test of whether the operation of a lawful trade or industry constitutes a nuisance is the reasonableness of conducting it in the manner, at the place, and under the circumstances shown by the evidence. Each case turns on its own facts and ordinarily the ultimate issue is one of fact, not law. *Patz v. Farmegg Products, Inc.*, 196 N.W.2d 557, 560–61 (Iowa 1972); *Bates v. Quality Ready-Mix Co.*, 261 Iowa 696, 704, 154 N.W.2d 852, 857 (1968). The existence of a nuisance is not affected by the intention of its creator not to injure anyone. *Patz*, 196 N.W.2d at 561. Priority of occupation and location—"who was there first"—is a circumstance of considerable weight. *Stockdale v. Agrico Chemical Co.*, 340 F.Supp. 244, 252 (N.D.Iowa 1972); *Helmkamp v. Clark Ready Mix Co.*, 214 N.W.2d 126, 129 (Iowa 1974); *Kriener v. Turkey Valley Community School District*, 212 N.W.2d 526, 530 (Iowa 1973).

■ When the alleged nuisance is claimed to be offensive to the person, courts apply the standard of "normal persons in a particular locality" to measure the existence of a nuisance. *Patz*, 196 N.W.2d at 561; *see also Kellerhals v. Kallenberger*, 251 Iowa 974, 980, 103 N.W.2d 691, 694 (1960). This normalcy standard also is applied where the use of property is claimed to be affected. "The plaintiff cannot, by devoting his own land to an unusually sensitive use, ... make a nuisance out of conduct of the adjoining defendant which would otherwise be harmless." W. Prosser, *The Law of Torts* § 87, at 579 (4th ed. 1971).

■ In the case before us, ITT asserts the Appliance Center's display televisions constituted a hypersensitive use of its

premises as a matter of law, and equates this situation to cases involving light thrown on outdoor theater screens in which light-throwing defendants have carried the day. *See Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Commission,* 34 Ill.2d 544, 216 N.E.2d 788 (1966); *Lynn Open Air Theatre, Inc. v. Sea Crest Cadillac-Pontiac, Inc.,* 1 Mass.App.Ct. 186, 294 N.E.2d 473 (1973); *Amphitheaters, Inc. v. Portland Meadows,* 184 Or. 336, 198 P.2d 847 (1948); *Sheridan Drive-In Theatre, Inc. v. State,* 384 P.2d 597 (Wyo.1963). Several of those cases are distinguishable both on facts and by the way the issue was raised.

We cannot equate the rare outdoor theater screen with the ubiquitous television that exists, in various numbers, in almost every home. Clearly, the presence of televisions on any premises is not such an abnormal condition that we can say, as a matter of law, that the owner has engaged in a *peculiarly* sensitive use of the property. This consideration, as well as related considerations of unreasonableness, gravity of harm, utility of conduct, and priority of occupation, are factual determinations that should have been submitted to the jury in this case. We find no trial court error in refusing to direct a verdict on this ground.

■ ITT's second contention asserts trial court should have directed a verdict in its favor because it did not participate in the creation or maintenance of the alleged nuisance. We have noted ITT was engaged in a multimillion dollar, national program to lease computers to travel agencies. It owned this computer and leased it to Central Travel. It was to ITT that the agency first turned when the effect of the computer radiation became apparent. ITT continued to collect its lease payments; the computer did not operate for the benefit of Crowell alone. The jury could have found ITT evidenced some measure of its responsibility, as owner of the computer, in contacting Honeywell and making belated inquiries regarding Appliance Center's problems both to Pearson and Crowell.

■ It is no ground for directed verdict that the computer was leased to Central Travel. "One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Restatement (Second) of Torts § 834 (1979). Even one who contracts out nuisance-causing work to independent contractors may have the duty, upon notice, "to take reasonably prompt and efficient means to suppress the nuisance." *Shannon v. Missouri Valley Limestone Co.,* 255 Iowa 528, 533, 122 N.W.2d 278, 281 (1963). A failure to act under circumstances in which one is under a duty to take positive action to prevent or abate the invasion of the private interest may make one liable, Restatement (Second) of Torts § 824, and this may include a lessor or licensor. *Id.* comment d.

■ An action for damages for nuisance need not be predicated on negligence. *Claude v. Weaver Construction Co.,* 261 Iowa 1225, 1229, 158 N.W.2d 139, 143 (1968). Nuisance ordinarily is considered as a condition, and not as an act or failure to act on the part of the responsible party. *Sparks v. City of Pella,* 258 Iowa 187, 190, 137 N.W.2d 909, 911 (1965). A person responsible for a harmful condition found to be a nuisance may be liable even though that person has used the highest possible degree of care to prevent or minimize the effect. *Ryan v. City of Emmetsburg,* 232 Iowa 600, 605, 4 N.W.2d 435, 439 (1942); *Bowman v. Humphrey,* 132 Iowa 234, 236–37, 109 N.W. 714, 715 (1906).

Where there is reasonable doubt whether one of several persons is substantially participating in carrying on an activity, the question is for the trier of fact. Restatement (Second) of Torts § 834 comment d. We hold such reasonable doubt existed on the record made in this case, and trial court did not err in refusing to direct a verdict on this ground.

Our holding on the two issues discussed above disposes of ITT's contention trial court should have granted its motion for

judgment notwithstanding the verdict, posited on the same grounds.

B. Honeywell asserts trial court should have granted its motion for directed verdict because, even though it manufactured the computer, Central Travel and ITT were in control of the instrument at all relevant times; thus Honeywell did not have the legal right to terminate its use. Honeywell devotes ten and one-half pages of its brief to this thesis without mentioning that it had an ongoing contract to service and maintain the computer.

 Much of what we have written in subdivision I(A) applies here. Again, the issue is one of material participation. Honeywell's design permitted radiation to escape this computer, although technology was available to minimize this effect. Apparently factors of cost and ease of service access weighed more in the design decision. Honeywell was the only party with the technological know-how to control the radiation leakage. Its maintenance contract with ITT clearly absolved it of any liability if anyone else made any alterations or additions to the equipment, and reserved the right to terminate the agreement should that occur. As with ITT, we think Honeywell's material participation was an issue for the finder of fact.

II. *Should Trial Court Have Directed a Verdict for Defendants on Appliance Center's Claim for Tortious Interference With Prospective Contractual Relations?*

The Appliance Center's petition alleged: That the manufacture and installation of said computer and the interference resulting therefrom has damaged the Plaintiff by the loss of sales of television sets and other appliances in the past, thus loss of profits, and will continue to damage the Plaintiff through loss of sales and loss of profits in the future and damage to Plaintiff's business reputation.

We have described the tort Appliance Center pled and attempted to prove as an interference with prospective business advantage. *Farmers Cooperative Elevator, Inc., Duncombe v. The State Bank*, 236 N.W.2d 674, 679 (Iowa 1975); *see also Clark v. Figge*, 181 N.W.2d 211, 213–14 (Iowa 1970). Recognition of such actionable tort protects the expectancies of "future contractual relations, such as the ... opportunity of obtaining customers." W. Prosser, *Law of Torts* § 130, at 950 (4th ed. 1971).

 In our decisions examining this tort, however, we have held a purpose on defendant's part to financially injure or destroy the plaintiff is essential. *Farmers Cooperative*, 236 N.W.2d at 681 ("To give rise to a viable cause of action ... the actor must have as at least one of his objects the purpose to injure or destroy the plaintiff."); *see also Harsha v. State Savings Bank*, 346 N.W.2d 791, 799–800 (Iowa 1984); *Clark v. Figge*, 181 N.W.2d at 213–14; *Boggs v. Duncan-Schell Furniture Co.*, 163 Iowa 106, 114–16, 143 N.W. 482, 485–86 (1913); *Dunshee v. Standard Oil Co.*, 152 Iowa 618, 626–27, 132 N.W. 371, 374–75 (1911). Although the Restatement's current position softens this requirement in this developing field of the law, *compare* Restatement (Second) of Torts (Tentative Draft 14) § 766A comment d, quoted in *Farmers Cooperative*, 236 N.W.2d at 681–82, *with* Restatement (Second) of Torts § 767 comment on clause b. (1979), we are not inclined to depart from our long-established rule.[1] That defendant act with the purpose to financially injure or destroy is still the prevailing requirement in this kind of case. *See* W. Prosser, § 130, at 952 ("No case has been found in which intended but purely incidental interference resulting from the pursuit of the defendant's own ends by proper means has been held to be actionable."). This is not a situation involving a

---

1. *See Farmers Cooperative*, 236 N.W.2d at 679:

 The role of the actor's purpose is considerably different in cases involving loss of existing contracts than in cases involving loss of prospective advantage. In cases of interference with existing contracts, a purpose to injure or destroy is not essential. The situation is different in cases involving interference with prospective advantage.

 (Citation omitted.)

specific contractual relationship or expectancy, in which the rule appears to impose liability on one who intentionally and unjustifiably interferes in pursuit of another objective, causing damage. *See Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 402–03 (Iowa 1982); *Stoller Fisheries, Inc. v. American Title Insurance Co.,* 258 N.W.2d 336, 340 (Iowa 1977); Restatement (Second) of Torts §§ 766, 766A. Both rules operate to avoid opening the door to virtually limitless suits of a highly speculative and remote nature. *See Nebraska Innkeepers, Inc. v. Pittsburg-Des Moines Corp.,* 345 N.W.2d 124, 130 (Iowa 1984).

▮▮▮ Defendants' motions for directed verdict raised this purpose issue. Viewing the evidence in the light most favorable to the Appliance Center, we hold it did not introduce substantial evidence of a purpose on the part of either defendant to injure or destroy the Appliance Center's business. *See Farmers Cooperative,* 236 N.W.2d at 682. At the most, defendants' actions or lack of action can only be interpreted as showing a total disregard for the success of the Appliance Center's enterprise. The motions for directed verdict on this count should have been granted.

III. *Should Trial Court Have Submitted the Issue of Compensatory Damages to the Jury, and if so, was the Award Excessive as a Result of Passion and Prejudice?*

A. Honeywell asserts there was no competent evidence the computer interference caused plaintiff any actual damages, therefore, its motion for directed verdict on this ground should have been sustained. We treat this issue briefly for the guidance it may furnish on the retrial of this case.

> We take a broad view in determining the sufficiency of evidence of damages. If the evidence shows damages have been sustained, we uphold recovery so long as the record discloses a reasonable basis from which the amount can be inferred or approximated.

*Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 403 (Iowa

1982); *see Larsen v. United Federal Savings and Loan Association,* 300 N.W.2d 281, 288 (Iowa 1981); *Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 286 (Iowa 1979). The problem of proof the Appliance Center faced in these circumstances is discussed in Restatement (Second) of Torts § 912 comment d at 483 (1979), which states in part:

> Although the burden is on the injured person to prove with a fair degree of certainty that the business or transaction was or would have been profitable, it is not fatal to the recovery of substantial damages that he is unable to prove with definiteness the amount of the profits he would have made or the amount of harm that the defendant has caused. It is only essential that he present such evidence as might reasonably be expected to be available under the circumstances.

▮▮▮ Appliance Center placed its 1976 through 1981 tax returns in evidence. Large decreases in income in 1980 and 1981 were posted, as contrasted to a growth in the prior years. There was testimony that color televisions constituted 60 percent of the gross sales, and that sales of these items dropped drastically in 1980 and 1981.

This evidence was not as precise as one might wish, nor was the effect, if any, of "a little bit of a downturn" in business generally in the community. Nonetheless, we hold it minimally was sufficient to take the issue to the jury, and that trial court did not err in refusing to direct a verdict on this ground.

B. ITT argues trial court should have sustained its motion for new trial on the ground the jury's verdict for compensatory damages was excessive. ITT asserts that, inasmuch as the Appliance Center's evidence was inadequate to justify such an award, it must have resulted from passion and prejudice against the defendants. We already have indicated the evidence of damage, although lacking in precision, was sufficient to justify the award returned by the jury. We find no error in trial court's failure to grant a new trial.

· IV. *Should Trial Court Have Submitted to the Jury the Issue of Punitive Damages?*

In their exceptions to instructions and in their post-trial motions, both Honeywell and ITT asserted there was no evidence to justify submitting the issue of punitive damages to the jury. The issue was submitted, and the jury fixed an award of $150,000 in favor of Appliance Center against both defendants. As we shall discuss below, trial court later allowed ITT full indemnity, including this amount, against Honeywell.

Our basic rules relating to punitive or exemplary damages were summarized in *Feeney v. Scott County,* 290 N.W.2d 885, 892 (Iowa 1980):

Exemplary damages are not awarded as a matter of right; rather, their allowance rests with the fact finder. *Young v. City of Des Moines,* 262 N.W.2d 612, 620 (Iowa 1978). Their award "depends upon whether under the facts in a particular case such [an] award is appropriate in order to punish an offending party or discourage others from similar wrongful conduct." *Meyer v. Nottger,* 241 N.W.2d 911, 922 (Iowa 1976). This determination depends upon the existence of malice—either actual or legal malice. "[L]egal malice ... may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights." *McCarthy v. J.P. Cullen & Son Corp.,* 199 N.W.2d 362, 369 (Iowa 1972).

A decision that provides guidance in determining the issue before us is *Claude v. Weaver Construction Co.,* 261 Iowa 1225, 1232, 158 N.W.2d 139, 144 (1968), where we quoted approvingly the following from *Newman v. Nelson,* 350 F.2d 602, 604–05 (10th Cir.1965):

[T]he mere commission of a nuisance justifying an award of actual damages would be insufficient to justify the assessment of punitive damages as a penalty. In other words, to be liable for actual damages one need only create or commit a nuisance, but to be punished for it

he must create and persistently maintain it with a reckless disregard for the rights of others.

*See generally* Annot., 31 A.L.R.3d 1346 (1970). In many controversies involving punitive damages, the fighting issue is the existence of legal malice. *See, e.g., Kimmel v. Iowa Realty Co.,* 339 N.W.2d 374, 382–84 (Iowa 1983); *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 404 (Iowa 1982); *Holcomb v. Hoffschneider,* 297 N.W.2d 210, 213–15 (Iowa 1980); *White v. Citizens National Bank,* 262 N.W.2d 812, 817 (Iowa 1978). Such a case was *Claude,* 261 Iowa at 1235, 158 N.W.2d at 146, where we wrote:

Viewed in a light most favorable to plaintiffs, it is to us evident some substantial evidence was presented disclosing defendant knowingly and intentionally, without just cause, persisted in the maintenance of a private nuisance despite repeated protests and complaints of its harmful consequences, thereby disclosing such willful disregard for plaintiffs' rights as to create a jury issue relative to punitive damages.

Honeywell argues Appliance Center did not introduce substantial evidence of legal malice with respect to it. It points to its prompt efforts to obviate the radiation leakage from the computer, and its ultimate correction of the problem through expensive alterations and additions. These efforts, it claims, effectively negated the element of malice necessary for a punitive damage claim, citing *White,* 262 N.W.2d at 817. Honeywell further argues it had no legal right to turn off the computer as did ITT and Crowell of Central Travel.

Appliance Center, on the other hand, asserts there was evidence from which the jury could find that after a brief flurry of trying to correct the problem inexpensively, Honeywell decided it had spent too much money and informed Pearson that if he did not like the situation he could move. Only after threat of a lawsuit, Appliance Center argues, did Honeywell again make an effort in October of 1980. Calls from Pearson went unanswered. Little or no

attention was paid to the radiation leakage during 1981 and only when trial approached did Honeywell spend the time and money to resolve the problem in May 1982. Appliance Center relies on *Claude,* 261 Iowa at 1235, 158 N.W.2d at 146, where we wrote:

> Defendant generally contends manifestation of solicitude, use of modern equipment, and efforts to eliminate or reduce offensive dust and smoke bar plaintiffs' right to recover punitive damages. This is to us a novel but nonpersuasive approach. Stated otherwise, we do not believe full play of the facts allows defendant to hide behind any such ineffective barricade.

> That which an offending party says or professes may be important, but is quickly obliterated by counterprevailing conduct of such nature as to disclose the declarations made were in fact meaningless. In a case such as that here presented, it is actual conduct which controls, not statements of interest, sympathy, or concern.

 Under the record made in this trial, we cannot say trial court erred in submitting the punitive damage claim against Honeywell to the jury.

We do not reach the same decision, however, with respect to ITT. The record made here does not disclose substantial evidence that it was guilty of legal malice—a showing of wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights. *McCarthy,* 199 N.W.2d at 369.

 ITT argues its only role was taking legal title to the computer from Honeywell and leasing it to Central Travel. When it received Pearson's complaint from its lessee it relayed it to Honeywell. Thereafter, Honeywell was undertaking the necessary adjustments and alterations. ITT points out that at no time did Appliance Center contact ITT directly. Although ITT's representative telephoned Pearson, the latter did not ask ITT to check back or to supervise the ongoing efforts of Honeywell.

Appliance Center argues ITT had a part in maintaining the nuisance despite Pearson's complaints, thereby disclosing a willful disregard for the Center's rights.

Terms of the lease agreement between Central Travel and ITT were never disclosed. There is little proof of ITT's knowledge of the extent of Pearson's problem or of Honeywell's allegedly dilatory efforts to correct it. Although we do not necessarily agree with trial court's findings in its ruling on ITT's cross-claim for indemnity, we think it is significant that it found "[t]he claims ... made against ITT by plaintiff ... were not ... based on alleged independent wrongful conduct of ITT against plaintiff [but] resulted solely from ITT's relationship with [and] reliance upon Honeywell." This finding is difficult to square with trial court's submission of the punitive damage issue against ITT to the jury.

For the guidance it may offer on retrial, we hold on this record a jury issue was generated on Honeywell's liability for punitive damages, but not on ITT's.

V. *Did Trial Court Improperly Award Indemnity to ITT on its Cross-Claim?*

ITT filed a cross-claim against Honeywell. Count I was for indemnity, alleging, *inter alia,* ITT's liability, if any, would be only derivative or vicarious, the duty was delegated to Honeywell by contract, and Honeywell's negligence would be active or primary while ITT's would be passive or secondary. Count II cross-claimed for contribution, which does not concern us here.

Trial court found the Appliance Center's claims were those on which ITT was secondarily liable and Honeywell primarily liable. It found Honeywell sold, installed, and maintained the computer under an express warranty the machine was free from defects in workmanship, fabrication, or material, and that ITT notified Honeywell of the complaints and its intent that the latter defend any action against ITT and indemnify it in the event of judgment. Trial court concluded ITT's involvement was passive, Honeywell's was active, and that ITT's liability resulted from its reliance on Honey-

well. Accordingly, it awarded ITT indemnity for the total damages of $221,000, together with interest, attorney fees, expenses and costs.

Appealing, Honeywell relies on express terms of its contract with ITT that provide ITT's "exclusive remedy and Honeywell's entire liability in contract, tort or otherwise" shall be the repair or exchange of equipment parts; and that "[i]n no event will Honeywell be liable for any indirect, special or consequential damages arising out of this Agreement or the use of any equipment, Software Product, documentation or service provided under this Agreement."

Honeywell asserts trial court completely disregarded these provisions. There is considerable question whether trial court's attention was directed to these provisions. There is no mention of them in Honeywell's answer to the cross-claim. In its oral motion to dismiss the claim, it simply stated "that the contract in and of itself shows they are not entitled to contribution or indemnity."

Honeywell further argues trial court's finding that ITT's involvement was passive was belied by the jury's verdicts finding both defendants liable for compensatory and punitive damages.

ITT's brief on appeal does not raise the issue that contract provisions were not relied on in trial court. It contends the provisions are unclear; the contract was prepared by Honeywell and must be construed against it; the provision as interpreted by Honeywell is unconscionable. ITT continues to argue its conduct was passive and that it should be only secondarily liable because it had no part in the design, construction, operation, or maintenance of the computer. It points out the jury was not given an opportunity to apportion responsibility between the defendants.

■ Our working rules relating to such indemnity were set out in *McCarthy v. J.P. Cullen & Son Corp.,* 199 N.W.2d 362, 371–73 (Iowa 1972). The remedy was extensively analyzed, together with the active-passive distinction, in *Sweeny v. Pease,* 294 N.W.2d 819, 821–23 (Iowa 1980). We have considerable doubt that the active-passive ground for indemnity is applicable under this record, but do not reach that issue because we hold the contract between these defendants waives ITT's right to assert the action.

■ Assuming the contract was prepared by Honeywell—a fact not disclosed in the record—we can find no ambiguity in the provisions limiting ITT's remedy and Honeywell's liability under the contract. The rule of construction ITT asserts thus affords it no relief. The fifty-one page agreement was not a consumer, adhesion-type agreement. Obviously it was structured by two large corporations, negotiating at arm's length. It is replete with handwritten modifications, additions, and deletions. On the record before us, we find no ground to hold it was unconscionable. It is likely the problem arising here was not contemplated by the parties. Nonetheless, the broad language of the agreement leaves no flexibility, a feature that might have been included at the time.

VI. *Did Trial Court's Instructions Improperly State the Iowa Law of Nuisance?*

■ Trial court's instructions required Appliance Center to prove defendants "unreasonably" interfered with the Center's use and enjoyment of its property. Honeywell and ITT objected, in essence, that this permitted the jury to judge "unreasonableness" in a vacuum; that the instructions made no attempt to define the unreasonableness concept. Because reasonableness under our nuisance decisions ordinarily is a question for the jury, *see Bates v. Quality Ready-Mix Co.,* 261 Iowa 696, 704, 154 N.W.2d 852, 857 (1968), the court on retrial should provide more guidance for the jury.

In *Bates,* 261 Iowa at 703, 154 N.W.2d at 857, we noted that reasonableness is a function of the manner in which, and the place where, defendant's business is conducted, and the circumstances under which defendant operates. Additional factors,

enumerated in *Patz v. Farmegg Products, Inc.*, 196 N.W.2d 557, 561 (Iowa 1972), include priority of location, character of the neighborhood, and the nature of the alleged wrong. The "character and gravity of the resulting injury" is, in fact, "a major factor in determining reasonableness," *Montgomery v. Bremer County Board of Supervisors*, 299 N.W.2d 687, 697 (Iowa 1980). Balanced against the gravity of the wrong is the utility and meritoriousness of the defendant's conduct, *Riter v. Keokuk Electro-Metals Co.*, 248 Iowa 710, 721, 82 N.W.2d 151, 158 (1957). *See also Stockdale v. Agrico Chemical Co.*, 340 F.Supp. 244, 252–53 (N.D.Iowa 1972). Such relevant factors and others are more succinctly summarized in Restatement (Second) of Torts sections 826, 827 and 828 (1979).

■■■ Another instruction given in this case stated that "[o]ne who contributes to the creation or continuance of a nuisance may be liable." ITT objected that neither this instruction nor any other informed the jury that a defendant's conduct must be a "substantial factor" in bringing about the alleged harm. Upon retrial the instructions should incorporate this requirement. *See Shannon v. Missouri Valley Limestone Co.*, 255 Iowa 528, 535, 122 N.W.2d

278, 282 (1963); Restatement (Second) of Torts § 834 and comment d.

■■■ Both Honeywell and ITT objected because the court did not submit to the jury the issue whether Appliance Center was devoting its premises to an unusually sensitive use. The discussion in division I is relevant here. We hold defendants were entitled to have this question resolved by the jury.

In view of our holding in division II, we do not examine defendants' issues concerning instructions relating to tortious interference with prospective business relations.

We reverse and remand with instructions to set aside the judgment in favor of Appliance Center against Honeywell and ITT, and the judgment entered on ITT's crossclaim against Honeywell. Defendants shall be granted a new trial in conformance with this opinion.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**